UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

RAJ RAJARATNAM, an individual,

                 Plaintiff,

         - against -

MOTLEY RICE, LLC, a South Carolina limited
liability company, MICHAEL E. ELSNER, an
individual, JAYAT P. KANETKAR, aka JAY
KANETKAR, an individual, RUDRA, an
individual named pseudonymously, BRIAN
MALLON, an individual, and JOHN "HANK"
ALLISON, an individual,

                 Defendants.

------------------------------------------------------------ x

Case No.: 1:18-cv-03234-KAM-RML

ECF Case

**Oral Argument Requested**

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
## BY DEFENDANTS MOTLEY RICE, LLC AND
## <u>MICHAEL E. ELSNER TO DISMISS AMENDED COMPLAINT</u>

Robert D. Balin
Sharon L. Schneier
Abigail B. Everdell
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: robbalin@dwt.com

*Attorneys for Defendants Motley Rice, LLC and
Michael E. Elsner*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    The New Jersey Action ............................................................... 4

    B.    The *Vanity Fair* Article .............................................................. 5

    C.    Allegations of Unrelated Conduct by Motley Rice or its Associates ................. 6

    D.    The Present Action ..................................................................... 7

ARGUMENT ........................................................................................................ 8

  I.    PLAINTIFF FAILS TO ALLEGE AN ACTIONABLE RICO CLAIM ..................... 9

    A.    Motley Rice's Alleged Wrongful Acts in the New Jersey Action and Alleged Defamation in the *Vanity Fair* Article Do Not Constitute Cognizable "Predicate Acts" Under RICO ................................................................. 10

    B.    Plaintiff Has Not Alleged Cognizable Injury Caused by Defendants' Actions. 14

    C.    The Amended Complaint Fails to Plausibly Plead That Any of the Acts Relating to Plaintiff Constituted Criminal Offenses ................................... 17

        1.    Wire Fraud ...................................................................... 17

        2.    Witness Tampering/Bribery............................................... 18

        3.    Receipt of FBI Documents................................................. 20

    D.    The Amended Complaint Fails to Plead a "Pattern of Racketeering Activity". 22

    E.    Plaintiff's RICO Claims Are Barred by the Statute of Limitations ............... 24

  II.    PLAINTIFF'S DEFAMATION CLAIM IS TIME-BARRED .............................. 26

    A.    New York's One-Year Statute of Limitations Has Long-Since Run ............... 27

    B.    There Is No Basis to Toll the Statute of Limitations .............................. 28

CONCLUSION .................................................................................................... 30

4839-6285-8637v.9 0111362-000001

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ................................................................................14, 15

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................8, 19

*Baron v. Complete Mgmt., Inc.*,
    260 F. App'x 399 (2d Cir. 2006) ................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................19

*Bernstein v. Misk*,
    948 F. Supp. 228 (E.D.N.Y. 1997) ................................................................23

*Burdick v. Am. Exp. Co.*,
    865 F.2d 527 (2d Cir. 1989) ................................................................16

*Capasso v. CIGNA Ins. Co.*,
    765 F. Supp. 839 (S.D.N.Y. 1991) ................................................................15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ................................................................5

*Chisolm v. City of New York*,
    No. 17-CV-5327 (MKB), 2018 WL 3336451 (E.D.N.Y. July 6, 2018) ................................................................29

*Colony at Holbrook, Inc. v. Strata C.G., Inc.*,
    No. 95 CV 913(NG), 1999 WL 172350 (E.D.N.Y. Mar. 25, 1999) ................................................................20

*Committee to Defend the United States Constitution v. Moon*,
    776 F. Supp. 568 (D.D.C. 1991) ................................................................16

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................................2, 13

*Creed Taylor, Inc. v. CBS, Inc.*,
    718 F. Supp. 1171 (S.D.N.Y. 1989) ................................................................13

ii

*Cullen v. City of New York*,
  No. 07–CV–3644 (CBA)(JMA), 2011 WL 1578581 (E.D.N.Y. Apr. 26, 2011) ...................26

*Curtis & Assocs.*, *P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011)............. *passim*

*David J. Gold, P.C. v. Berkin*,
  No. 00 Civ. 7940 (AGS), 2001 WL 121940 (S.D.N.Y. Feb. 13, 2001) ...............................27

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001).................................................................................................9, 14

*Dillman v. Combustion Eng'g, Inc.*,
  784 F.2d 57 (2d Cir. 1986).........................................................................................................30

*Dowling v. United States*,
  473 U.S. 207 (1985).....................................................................................................................21

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018).......................................................................................................15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004).......................................................................................................10

*G-I Holdings Inc. v. Baron & Budd*,
  No. 01-cv-0216, Dkt. No. 384 (S.D.N.Y. Dec. 14, 2015) ........................................................6

*Glick v. Berk & Michaels, P.C.*,
  No. 90 Civ. 4230 (CSH), 1991 WL 152614 (S.D.N.Y. July 26, 1991) ..................................30

*Greenwald v. Manko*,
  840 F. Supp. 198 (E.D.N.Y. 1993) ...........................................................................................30

*Gunn v. Palmieri*,
  1989 WL 119519 (E.D.N.Y. Sept. 29, 1989), *aff'd*, 904 F.2d 33 (2d Cir.1990),
  *cert. denied*, 498 U.S. 1049 (1991).........................................................................................11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)..................................................................................................................9, 22

*Hanly v. Powell Goldstein, LLP*,
  290 F. App'x 435 (2d Cir. 2008) ..............................................................................................28

*Hollander v. Flash Dancers Topless Club*,
  340 F. Supp. 2d 453 (S.D.N.Y. 2004), *order amended* (Oct. 28, 2004),
  *aff'd*, 173 F. App'x 15 (2d Cir. 2006).....................................................................................15

iii

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ..........................................................................................14

*In re Basic Food Grp. LLC*,
   No. 15–10892(JLG), 2016 WL 3677673 (Bankr. S.D.N.Y. July 1, 2016) ............................23

*Johnson v. Nyack Hosp.*,
   86 F.3d 8 (2d Cir. 1996) ....................................................................................29

*Kades v. Organic Inc.*,
   No. 00-cv-3671-LTS-RLE, 2003 WL 470331 (S.D.N.Y. Feb. 24, 2003) ................................8

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ..............................8

*Kaur v. New York City Health & Hosps. Corp.*,
   688 F. Supp. 2d 317 (S.D.N.Y. 2010) ....................................................................26

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) .............................................................................11, 12

*Kimm v. Chang Hoon Lee & Champ, Inc.*,
   196 F. App'x 14 (2d Cir. 2006) ...........................................................................15

*Kimm v. Lee*,
   No. 04 Civ. 5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196
   F. App'x 14 ....................................................................................2, 13, 14, 17

*Koch v. Christie's Int'l PLC, A U.K.*,
   699 F.3d 141 (2d. Cir. 2012) ..............................................................................24

*Krishanthi v. Rajaratnam*,
   No. 09-cv-05395-JLL-JAD (D.N.J. filed Oct. 22, 2009) ..............................................1, 13

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) ...............................................................................18

*Muscletech Research & Dev., Inc. v. E. Coast Ingredients, LLC*,
   No. 00-CV-0753A(F), 2004 WL 941815 (W.D.N.Y. Mar. 25, 2004),
   *R&R adopted in part*, No. 00-CV-753A, 2004 WL 2191578 (W.D.N.Y. Sept.
   27, 2004) ....................................................................................................21

*Nakahara v. Bal*,
   No. 97 Civ. 2027(DLC), 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ..............................11, 12

*New York v. Solvent Chem. Co.*,
   166 F.R.D. 284 (W.D.N.Y. 1996) .........................................................................19

iv

*Nightingale Grp., LLC v. CW Capital Mgmt., LLC*,
No. 11-cv-9293 (PAE), 2012 WL 2674539 (S.D.N.Y. July 5, 2012).........................4

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998)........................................................................................4

*Personis v. Oiler*,
889 F.2d 424 (2d Cir. 1989).....................................................................................28

*Prasad v. MML Inv'rs Servs., Inc.*,
No. 04 Civ. 380 (RWS), 2004 WL 1151735 (S.D.N.Y. May 24, 2004) .................19

*Ray Larsen Assocs., Inc. v. Nikko America, Inc.*,
No. 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .....................23

*Reich v. Lopez*,
858 F.3d 55 (2d Cir.), *cert. denied*, 138 S. Ct. 282 (2017) .....................................23

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
No. 17-CV-02824-JST, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) .....................16

*Rotella v. Wood*,
528 U.S. 549 (2000).................................................................................................24

*Sanchez v. ASA Coll., Inc.*,
No. 14-cv-5006 (JMF), 2015 WL 3540836 (S.D.N.Y. June 5, 2015) ......................8

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F. 3d 91 (2d Cir. 1997)......................................................................................22

*SEC v. Rajaratnam*,
No. 11-cv-5124 (2d Cir. Mar. 5, 2019)......................................................................3

*Skeene v. City of New York*,
No. 14-cv-6054 (ENV) (CLP), 2016 WL 927182 (E.D.N.Y. Mar. 7, 2016)...........26

*Smulley v. Fed. Hous. Fin. Agency*,
754 F. App'x 18 (2d Cir. 2018) ...............................................................................11

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008)......................................................................................9

*Staehr v. Hartford Fin. Servs. Grp. Inc.*,
547 F.3d 406 (2d Cir. 2008)......................................................................................24

*Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*,
891 F. Supp. 113 (S.D.N.Y. 1994), *aff'd*, 59 F.3d 20 (2d Cir. 1995) .......................8

v

*United States v. Binday*,
    804 F.3d 558 (2d Cir. 2015)...............................................................................17

*United States v. Brown*,
    925 F.2d 1301 (10th Cir. 1991) ........................................................................21

*United States v. Eisen*,
    974 F.2d 246 (2d Cir. 1992).............................................................................11

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989)...........................................................................23

*United States v. Piervinanzi*,
    23 F.3d 670 (2d Cir. 1994).............................................................................22

*United States v. Vernace*,
    811 F.3d 609 (2d Cir. 2016).............................................................................22

*Vild v. Visconsi*,
    956 F.2d 560 (6th Cir.), *cert. denied*, 506 U.S. 832 (1992).....................................16

*von Bulow by Auersperg v. von Bulow*,
    657 F. Supp. 1134 (S.D.N.Y. 1987)...............................................................2, 11

*Weaver v. Boriskin*,
    751 F. App'x 96 (2d Cir. 2018) .......................................................................11

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).......................9

**State Cases**

*Bumpus v. New York City Transit Auth.*,
    66 A.D.3d 26 (2d Dep't 2009) .......................................................................29

*Buran v. Coupal*,
    87 N.Y.2d 173 (1995) ................................................................................29

*Byramain v. Stevenson*,
    278 A.D.2d 619 (3d Dep't 2000) ...................................................................28

*Firth v. State*,
    184 Misc. 2d 105 (N.Y. Ct. Cl. 2000), *aff'd*, 287 A.D.2d 771 (3d Dep't 2001),
    *aff'd*, 98 N.Y.2d 365 (2002).......................................................................27

*Firth v. State*,
    98 N.Y.2d 365 (2002) ................................................................................27

*Gleason v. Spota*,
    194 A.D.2d 764 (1993) ...........................................................................................30

*Gregoire v. G. P. Putnam's Sons*,
    298 N.Y. 119 (1948) .............................................................................................27

*Karam v. First Am. Bank of N.Y.*,
    190 A.D.2d 1017 (1993) .......................................................................................28

*Kotlyarsky v. New York Post*,
    195 Misc. 2d 150 (Sup. Ct. Kings Cty. 2003) .....................................................30

*LeBlanc v. Skinner*,
    103 A.D.3d 202 (2d Dep't 2012) ...................................................................28, 29

*Mandell v. Terminal Beauty Shops, Inc.*,
    23 Misc. 2d 205 (Sup. Ct. N.Y. Cty. 1960) ........................................................28

*Rajaratnam v. "Rudra"*,
    No. 160185/2017, Dkt. No. 1 (Sup. Ct. N.Y. Cty., Nov. 14, 2017).......................7

*Teneriello v. Travelers Cos.*,
    226 A.D.2d 1137 (4th Dep't 1996) ......................................................................28

*Toomey v. Farley*,
    2 N.Y.2d 71 (1956) ..............................................................................................27

**Federal Statutes**

18 U.S.C.
    § 201..........................................................................................................5, 7, 9, 10
    § 1341.................................................................................................................7, 9
    § 1343..........................................................................................................5, 7, 9
    § 1505.....................................................................................................................6
    § 1512.....................................................................................................................5
    § 1512.....................................................................................................................6
    § 1512.....................................................................................................................9
    § 1957.................................................................................................5, 7, 9, 21, 22
    § 1961.....................................................................................................................9
    § 1962...............................................................................................................9, 14
    § 1964...............................................................................................................2, 14
    § 1982...................................................................................................................10
    § 2314 ........................................................................................................... *passim*
    § 2315..........................................................................................................5, 9, 21

Civil Practice Law and Rules 215(3) ..........................................................................27

**Rules**

Federal Rules of Civil Procedure
    9(b) ............................................................................................................8, 9, 18, 30
    12(b)(6) ......................................................................................................1, 4, 12

**Regulations**

28 C.F.R. § 16.22 ...................................................................................................21

**Other Authorities**

*Treasury Targets Charity Covertly Supporting Violence in Sri Lanka*, available at
    https://web.archive.org/web/20080207171900/http://www.ustreas.gov/press/re
    leases/hp683.htm ..............................................................................................4

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Motley Rice, LLC ("Motley Rice") and Motley Rice partner Michael E. Elsner (collectively, "Motley Rice") submit this memorandum of law in support of their motion to dismiss the Amended Complaint for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Plaintiff Raj Rajaratnam is a defendant in a terrorism financing suit that has been pending and actively litigated in the United States District of New Jersey since 2009 (the "New Jersey Action"). *See Krishanthi v. Rajaratnam*, No. 09-cv-05395-JLL-JAD (D.N.J. filed Oct. 22, 2009). Motley Rice attorneys represent the plaintiffs in that action, who are the victims of violent acts perpetrated by the Sri Lankan terrorist organization called the Liberation Tigers of Tamil Eelam ("LTTE"). The complaint alleges Rajaratnam knowingly funded the LTTE. Now, almost nine years after commencement of *that* lawsuit, Rajaratnam has commenced *this* action against Motley Rice.

The Amended Complaint, which was filed after receipt of Motley Rice's motion to dismiss the original complaint, corrects none of the deficiencies in the original pleading. As before, the gravamen of the Amended Complaint is an unripe malicious prosecution claim arising from the still-pending New Jersey Action and a patently time-barred defamation claim arising from a September 2011 article in *Vanity Fair* (the "*Vanity Fair* Article"). And while the sprawling RICO pleading labors to link this core of non-actionable conduct to a broader scheme of alleged prior misconduct by Motley Rice or its investigators, those allegations of prior misconduct have nothing to do with Plaintiff. Even accepting the facts pled in the Amended Complaint as true, it fails to state a plausible claim for relief for several reasons.

---

[1] Motley Rice also joins in the arguments and additional grounds for dismissal (insofar as applicable to Motley Rice) set forth in the motion to dismiss filed by its co-defendants.

**First and foremost**, as a matter of law, the alleged wrongdoing by Motley Rice in the New Jersey Action, and the alleged defamation arising from the *Vanity Fair* Article, cannot form the basis of a RICO claim.  Time and time again courts in this Circuit have held that neither alleged wrongful acts in prosecuting a lawsuit, *von Bulow by Auersperg v. von Bulow,* 657 F. Supp. 1134, 1144-45 (S.D.N.Y. 1987), nor alleged defamation, *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 138 n.8 (E.D.N.Y. 2010), constitute a "predicate act" under the RICO statute.  As this Court has recognized, courts do not allow disguised wrongful prosecution claims to proceed under RICO lest they "usurp [the] underlying . . . litigation" where "plaintiffs[] should direct such claims."  *Curtis & Assocs.*, *P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173-74 (E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011).  It is equally well-settled that defamation claims cannot be dressed up and repackaged as RICO predicate acts.  *See, e.g.*, *Kimm v. Lee*, No. 04 Civ. 5724(HB), 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006.  *See* Point I.A, *infra*.

**Second and relatedly**, Plaintiff has not alleged any injury to his "business or property" that was proximately caused by Motley Rice's challenged acts.  18 U.S.C. § 1964(c).  While Plaintiff avers he suffered increased litigation expenses in the New Jersey Action, the loss of "investment opportunities," the inability to recover monies allegedly otherwise recoverable by him, and reputational damages arising from the *Vanity Fair* Article, these "injuries" are not alleged to have been proximately caused by the claimed RICO violations, and in some cases, do not even constitute injury to "business or property" within the meaning of the statute.  Moreover, any alleged predicate acts that were committed by Motley Rice in the course of *other* (and, in some cases decades old) unrelated lawsuits caused no injury to Rajaratnam whatsoever, since they are *wholly* unrelated to Rajaratnam.  *See* Point I.B, *infra*.

**Third**, the Amended Complaint does not even plausibly plead that the alleged acts by Motley Rice relating to Rajaratnam and the New Jersey Action constitute criminal offenses, as is required to plead a "predicate act" cognizable under RICO.  *See* Point I.C, *infra*.

**Fourth**, Plaintiff does not and cannot allege a valid "pattern" of racketeering activity.  Indeed, Plaintiff's attempt to rely on wholly unrelated alleged predicate acts committed before the filing of the New Jersey Action is preposterous.  These acts—which all predate 2006—have *nothing* to do with Rajaratnam, and he cannot show a "pattern of racketeering activity" by reference to disparate acts involving wholly unrelated victims and circumstances.  *See* Point I.D, *infra*.

**Fifth**, Plaintiff's RICO claims are time-barred under the four-year statute of limitations that governs RICO suits.  The limitations period began to run in 2009, upon the filing of the New Jersey Action, which Plaintiff claims is frivolous and, hence, caused him injury.  Plaintiff has no valid excuse for his delay in not bringing suit until 2018.  *See* Point I.E.D, *infra*.

**Last,** Plaintiff's state law defamation claim is likewise patently time-barred under the applicable one-year limitations period.  *See* Point II, *infra*.

In sum, dismissal of the Amended Complaint with prejudice is warranted.

## STATEMENT OF FACTS

Plaintiff is an ethnic Sri Lankan Tamil.  Am. Compl. ¶ 24.  After immigrating to the United States, he spent his career accumulating a great fortune, much of it through a vast illegal insider trading operation for which he is currently serving an 11-year prison sentence (the longest prison term ever imposed for insider trading).  *Id*. ¶¶ 24, 85.  *See SEC v. Rajaratnam*, No. 11-cv-5124 (2d Cir. Mar. 5, 2019) (upholding $92.8 million civil penalty levied against Plaintiff).  Before his conviction, Plaintiff routinely funneled large donations into the Tamil Rehabilitation Organization ("TRO") which, in 2007, was designated by the U.S. government as a front for

terrorism funding activities related to the LTTE.  Am. Compl. ¶¶ 81-82.[2]

## A.    The New Jersey Action

In 2009, Motley Rice, through its partner Elsner, filed the New Jersey Action on behalf of victims of the LTTE's violent activities, who contend that Plaintiff's intention in making donations to the TRO, and other organizations, was to fund the terrorist acts of the LTTE.  *Id*. ¶¶ 10, 85, 87.  *See* Declaration of Robert Balin, dated April 12, 2019 ("Balin Decl."), Exs. B & C.[3] Plaintiff denies these allegations.  Am. Compl. ¶ 10.  The New Jersey Action is ongoing.

In this lawsuit, Plaintiff alleges that the New Jersey Action is part of a "scheme" by Motley Rice to "use[] its unlawful access to government secrets to manufacture a lawsuit that would frighten Mr. Rajaratnam into a quick settlement."  *Id*. ¶ 10.  He avers that around 2009, Motley Rice retained former Joint Terrorism Task Force ("JTTF") agents Jayat Kanetkar, Brian Mallon, and John Allison (collectively, the "Former JTTF Agents")—all of whom had previously "participated in the JTTF investigation into LTTE Terrorism"—as expert witnesses in the New Jersey Action.  *Id*. ¶¶ 72-75, 114.  The Amended Complaint also alleges that Motley Rice, acting on its own and through the Former JTTF Agents, received from a former confidential government informant known as "Rudra" documents "which Rudra had obtained while working on behalf of the FBI."  *Id*. ¶¶ 73-75, 196.  The Amended Complaint pleads that "Motley Rice knew that the disclosure of these documents . . . was unlawful," and that the firm's receipt, possession, and transport of them violated federal stolen property statutes. 18 U.S.C. §§

---

[2] *See also Treasury Targets Charity Covertly Supporting Violence in Sri Lanka*, available at https://web.archive.org/web/20080207171900/http://www.ustreas.gov/press/releases/hp683.htm.

[3] The Court may consider filings made in the New Jersey Action as "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  *See, e.g., Nightingale Grp., LLC v. CW Capital Mgmt., LLC*, No. 11-cv-9293 (PAE), 2012 WL 2674539, at *4 n.9 (S.D.N.Y. July 5, 2012) ("On a motion to dismiss, the Court may take judicial notice of court filings, including from related litigation.") (citations omitted).

2314, 2315.  In connection with the New Jersey Action, Plaintiff alleges Motley Rice

"compensated" Rudra for these documents, "worth more than $10,000," in violation of 18 U.S.C.

§ 1957 (money laundering), and paid Rudra either "over $75,000" or "roughly $40,000" in

expense reimbursements (as well as other unspecified "additional things of value") in violation

of 18 U.S.C. § 201(c)(2) (bribery).  *Id*. ¶¶ 91-93, 115.  Plaintiff further speculates that "since at

least 2009, [Defendants] have repeatedly and corruptly persuaded, or attempted to persuade,

Rudra to cooperate . . . with the intent to influence his testimony under oath in the New Jersey

Litigation," and to cause him and the Former JTTF Agents to withhold discovery documents

from Plaintiff, in violation of 18 U.S.C. § 1512 (witness tampering).  *Id.* ¶¶ 96, 131.

Last, the Amended Complaint avers that Motley Rice made a number of false

representations in electronic court filings in the New Jersey Action.  *See id*. ¶¶ 135-37, 139-144,

145-47, 148-52.  These filings are alleged to constitute wire fraud in violation of 18 U.S.C. §

1343.  *Id*.  Motley Rice also disseminated a press release at the outset of the litigation (the "2009

Press Release") which the Amended Complaint avers contains false statements about Plaintiff

intended to gain publicity and "increase the pressure on [him] to settle"—another instance of

alleged wire fraud.  *Id*. ¶¶ 97-98.

**B.**     **The *Vanity Fair* Article**

On September 30, 2011, *Vanity Fair* published an article entitled "Crouching Tiger,

Hidden Raj," which reported on the U.S. government's investigation into TRO fundraising for

the LTTE and on the New Jersey Action.  *Id*. ¶ 100; Balin Decl., Ex. A.[4]  The Amended

Complaint alleges that Kanetkar and Rudra made false and defamatory statements in the *Vanity*

---

[4] Although the *Vanity Fair* Article is not annexed to the Amended Complaint, the pleadings rely heavily upon the article as the basis for Rajaratnam's RICO and libel claims.  Accordingly, the Article may be considered by the Court.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

*Fair* Article concerning Rajaratnam's comments at a November 2002 fundraiser (the "November 2002 Event") and his financial support for the LTTE.  Am. Compl. ¶¶ 103-04.  The Amended Complaint further avers that Kanetkar and Rudra were "working for Motley Rice at the time they gave their interviews to Vanity Fair," but this was not indicated in the Article.  *Id.* ¶ 101.  The Amended Complaint, rather remarkably, pleads that because Motley Rice "coordinated" Kanetkar and Rudra's statements, it "caused the false statements to be widely disseminated via interstate wires on Vanity Fair's website," violating the wire fraud statute. *Id.* ¶¶ 106-07.

## C.     Allegations of Unrelated Conduct by Motley Rice or its Associates

The Amended Complaint labors to link the alleged wrongdoings in the New Jersey Action and *Vanity Fair* Article to a broader scheme of alleged misconduct by Motley Rice.  It spins a handful of discrete and wholly unrelated acts from as far back as the 1970s (collectively, the "pre-2006 Acts")[5] into a series of overwrought civil RICO claims against Motley Rice and its investigators.  Specifically, the Amended Complaint alleges that:

- Activity Relating to Asbestos Litigation:  In prosecuting asbestos litigation in the 1970s onward, the prior firm of Motley Rice's founders induced false expert testimony in violation of 18 U.S.C. § 1512, and used "threats" and "intimidation" to inhibit the passage of a bill related to asbestos claims, in violation of 18 U.S.C. § 1505.  Am. Compl. ¶¶ 30-33.[6]

- Activity related to the 9/11 Terror Attack Litigation:  Motley Rice's then-lead investigator Jean-Charles Brisard allegedly falsified his translation of  a document listing "donors to Osama bin Laden," which resulted in a defendant being erroneously named in Motley Rice's class action on behalf of 9/11 terror attack victims.  *Id.* ¶¶ 39-42.  Brisard was then "replaced" with Michael Asimos, who allegedly shared information with "people at the Department of Defense .

---

[5] The Amended Complaint conclusorily asserts that some of these alleged prior acts continued until "2006 or later," but does not specify any actual acts in this time frame.  *See* Am. Compl. ¶¶ 44, 45, 57, 58, 59, 60.  Every single act alleged is dated to 2005 or earlier.  *Id.* ¶¶ 68-71.

[6] The lawsuit referenced in the Amended Complaint—in which the plaintiff alleged that Motley Rice's predecessor firm induced medical experts to testify falsely and fraudulently induced settlement agreements (Am. Compl. ¶ 33)—resulted in entry of judgment in favor of the defendants, following dismissal or withdrawal of plaintiff's claims.  *See G-I Holdings Inc. v. Baron & Budd*, No. 01-cv-0216, Dkt. No. 384 (S.D.N.Y. Dec. 14, 2015).  Rajaratnam fails to apprise this Court of that fact.

6

. . in the hopes of receiving a quid pro quo" from the government, in violation of criminal bribery and wire fraud statutes, 18 U.S.C. §§ 201, 1341, 1343.  Am. Compl. ¶ 43-45.[7]

- Activity of Rosetta:  Motley Rice investigators violated various statutes by allegedly lying to a congressional staffer so Asimos could travel to Iraq to "gather intel", *id.* ¶ 50-54 and through Asimo's organization Rosetta Research and Consulting LLC ("Rosetta"), Asimos, Mallon, and Motley Rice "gain[ed] access to sensitive information," in violation of the Stolen Property Act, 18 U.S.C. §§ 2314, 2315, and 18 U.S.C. §§ 1957.  *Id.* 55-60.  Rosetta allegedly offered its information to an FBI agent in the *hopes* he would eventually share information back, received information from a different FBI agent, and took another FBI agent on a "house-hunting trip 'in anticipation of being hired by Rosetta,'" each an alleged act of criminal bribery, 18 U.S.C. §§ 201.  Am. Compl. ¶¶ 61-67.

- Inducing the Arrest of an Afghan Drug Lord:  In 2004 and 2005, at the DEA's request, Motley Rice allegedly induced a "notorious Afghan drug lord" to come to the United States under false pretenses, where he was arrested and sentenced to life in prison, thereby committing wire fraud against the drug lord, 18 U.S.C. § 1343.  Am. Compl. ¶¶ 68-71.

**D.     The Present Action**

On November 14, 2017, Rajaratnam filed a Summons with Notice in Supreme Court, New York County, asserting a defamation claim against Motley Rice, Kanetkar, and Rudra.  *See Rajaratnam v. "Rudra"*, No. 160185/2017, Dkt. No. 1 (Sup. Ct. N.Y. Cty., Nov. 14, 2017) (the "New York State Court Action").  Thereafter, on June 1, 2018, Rajaratnam filed complaints in the New York State Court Action and his initial complaint in this action.  *See* Dkt. 1.  Both complaints pled an identical defamation claim, with the complaint in this action also including RICO claims.  The parties stipulated that the New York State Court Action would be dismissed without prejudice, and that the statute of limitations for Plaintiff's defamation claim in this action would be tolled from November 14, 2017 to June 1, 2018.  *See* Dkt. No. 25.  On December 28, 2019, Defendants served Plaintiff with motions to dismiss the original complaint.  In lieu of

---

[7] Plaintiff does not identify the "shared" information, but speculates it "included privileged materials."  Am. Compl. *Id*. ¶ 43.

opposing, on January 18, 2019, Plaintiff amended his complaint, which, in addition to the defamation claim (Am. Compl. ¶¶ 187-199 (Count V)), asserts four RICO claims (*Id*. ¶¶ 155-86 (Counts I-IV)). .

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement'" and where the well-pled facts do not "plausibly give rise to an entitlement to relief," dismissal is required. *Id.* at 678-79 (citation omitted).

Moreover, in civil RICO claims, "it is well established that allegations of mail fraud, wire fraud, and transportation of stolen property must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." *Kades v. Organic Inc.*, No. 00-cv-3671-LTS-RLE, 2003 WL 470331, at *9 (S.D.N.Y. Feb. 24, 2003); *see also Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 891 F. Supp. 113, 118 (S.D.N.Y. 1994), *aff'd*, 59 F.3d 20 (2d Cir. 1995). "[T]he mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants." *Sanchez v. ASA Coll., Inc.*, No. 14-cv-5006 (JMF), 2015 WL 3540836, at *5 (S.D.N.Y. June 5, 2015). For that reason, "and because [of] the allure of treble damages [and] attorney's fees," courts have recognized their "obligation to scrutinize civil RICO claims early in the litigation," *id.*, in order "to flush out frivolous" ones. *Katzman v. Victoria's Secret*

*Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).  .[8]

## I.    PLAINTIFF FAILS TO ALLEGE AN ACTIONABLE RICO CLAIM

To state a civil RICO claim, a plaintiff must allege "(1) a violation of the RICO statute,

18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001).  All Section

1962 claims also require a showing of "a pattern of racketeering activity" by the defendant.  *H.J.*

*Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989); *Spool v. World Child Int'l Adoption*

*Agency,* 520 F.3d 178, 183 (2d Cir. 2008).

The statute defines "racketeering activity" to include a host of criminal offenses which

are, in turn, defined by federal and state law.  *See* 18 U.S.C. § 1961(1).  These enumerated

offenses – or "predicate acts" – include (as relevant to the Amended Complaint) violations of

federal mail and wire fraud statutes (18 U.S.C. §§ 1341, 1343); federal bribery, witness

tampering, and obstruction of official proceedings statutes (18 U.S.C. §§ 201, 1512); and federal

stolen property statutes (18 U.S.C. §§ 2314, 2315, 1957).  *See* 18 U.S.C. § 1961(1).  Moreover, a

complaint must set forth at least "two predicate acts occurring within ten years of each other" to

allege a pattern of racketeering activity.  *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F.

Supp. 2d 486, 496 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

The Amended Complaint fails to meet the strict pleading requirements that govern RICO

actions for several reasons.  **First**, the law is settled that neither improper litigation activity (the

New Jersey Action) nor defamatory statements (the *Vanity Fair* Article) constitute "predicate

---

[8] Notably, the Amended Complaint should be dismissed *with prejudice* because any attempt by Plaintiff to remedy the myriad failures identified herein would be futile. *See, e.g.*, *Baron v. Complete Mgmt., Inc.*, 260 F. App'x 399, 400-01 (2d Cir. 2006) (affirming dismissal with prejudice where plaintiff could not "(1) plead enough facts to state a claim to relief that is plausible on its face, (2) satisfy Fed. R. Civ. P. 9(b)'s requirement that fraud be pleaded with particularity, or (3) satisfy RICO's pleading requirements with respect to standing") (citations omitted).

9

acts" within the meaning of RICO.  **Second**, Plaintiff fails to plausibly plead that his claimed

damages to "business or property" were proximately caused by the predicate acts alleged.  And,

of course, Plaintiff does not and cannot claim that *he* suffered any injury whatsoever from the

acts of misconduct he alleges Motley Rice committed in wholly-unrelated lawsuits, with no

connection to Plaintiff, that Motley Rice prosecuted on behalf of clients in the past.  **Third**, the

acts Plaintiff alleges Motley Rice committed in connection with the New Jersey Action and the

*Vanity Fair* Article do not constitute criminal offenses and, hence, do not even constitute

"predicate acts" under RICO.  **Fourth,** the Amended Complaint fails to plead a "pattern" of

racketeering activity.  Rather, it merely strings together a series of wholly disconnected acts

spanning decades, most of which have nothing whatsoever to do with the Plaintiff.  **Finally**, the

four-year statute of limitations bars Plaintiff's RICO claims, since he was on notice of his alleged

injury in 2009.  For all these reasons, the Amended Complaint fails to state a plausible RICO

claim and should be dismissed.[9]

A.   **Motley Rice's Alleged Wrongful Acts in the New Jersey Action and Alleged Defamation in the *Vanity Fair* Article Do Not Constitute Cognizable "Predicate Acts" Under RICO**

The Amended Complaint pleads four sets of "illegal" acts in the New Jersey Action that

allegedly caused Plaintiff harm.  Specifically, it alleges Motley Rice:

i.   received and transmitted FBI materials obtained from Rudra for use in the New Jersey Action, and "compensated" Rudra for those materials, in violation of stolen property statutes, 18 U.S.C. §§ 2314, 2315, 1957, Am. Compl. ¶¶ 75-76, 78, 141;

ii.  committed wire fraud by electronically submitting court filings that included "false statements" regarding Motley Rice's acquisition and use of confidential government information (allegedly obtained through Rudra and the Former JTTF Agents), *id*. ¶¶ 138-44;

iii. violated the federal bribery statute, 18 U.S.C. § 201(c)(2), by making expense reimbursement payments to the witness Rudra that Plaintiff speculates were "to

---

[9] Because Plaintiff fails to adequately allege a substantive RICO violation, his RICO conspiracy claim under 18 U.S.C. § 1982(d) also fails.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 182 (2d Cir. 2004).

secure and influence [his] testimony in the New Jersey Litigation—including false testimony," *id*. ¶¶ 91-93; and

iv.    committed wire fraud by disseminating the 2009 Press Release and by "orchestrating and planting 'fake news'" in the form of the *Vanity Fair* Article, which was thereafter "disseminated via interstate wires on *Vanity Fair*'s website."  *Id*. ¶¶ 97-99, 106-07.

None of these allegations are sufficient to plead even a single predicate act under RICO.

Where, as here, "the gravamen of [Plaintiff's] action is one for malicious prosecution," *von Bulow by Auersperg*, 657 F. Supp. at 1141, that claim cannot serve as a predicate act under RICO.  *Nakahara v. Bal*, No. 97 Civ. 2027(DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998); *Curtis*, 758 F. Supp. 2d at 172.  (allegations that a "litigation is frivolous, fraudulent, or baseless—essentially claims of malicious prosecution—without more, cannot constitute a viable RICO predicate act"); *Kim v. Kimm*, 884 F.3d 98, 104-105 (2d Cir. 2018) ("where . . . a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act.").  This principle has been reiterated time and time again by courts in this Circuit.  *See, e.g.*, *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18 (2d Cir. 2018) (dismissing RICO claims based on "false representations and filed false documents in Smulley's state court action(s)"); *Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (dismissing RICO claims based on "various fraudulent litigation activities"); *Gunn v. Palmieri,* 1989 WL 119519, at *1 (E.D.N.Y. Sept. 29, 1989) (rejecting "untenable" interpretation of RICO which would permit litigation activities to be construed as RICO predicate acts), *aff'd*, 904 F.2d 33 (2d Cir.1990), *cert. denied*, 498 U.S. 1049 (1991).[10]

---

[10] Plaintiff's claims fall far short of the limited exception recognized in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992).  There, the Second Circuit held that a criminal RICO claim could proceed against members of a law firm based on their routine practice of pursuing counterfeit personal injury claims (both through pre-litigation correspondence and litigations), bribing and pressuring witnesses to testify falsely, and falsifying physical and documentary evidence.  *Id*. at 251.  There, unlike here, the acts "amounted to far more than mere 'litigation activities.'"  Moreover, courts in this Circuit have sharply distinguished *Eisen* from civil RICO suits where a

11

In *Curtis*, as here, the plaintiff alleged that the defendant law firm "suborned perjury" and committed "wire fraud" by making false representations in court filings in furtherance of "phony" and "frivolous" litigation.  *Curtis*, 758 F. Supp. 2d at 173.  In granting the defendant's Rule 12(b)(6) motion, this Court aptly noted that, "allowing the federal RICO statute to usurp underlying legitimate state court litigation as proposed by plaintiffs here would inappropriately bypass the state tribunal where the action is pending and which properly controls that proceeding."  *Id*.  There is simply no reason for this Court to usurp its sister court's jurisdiction over these matters, and indeed every reason for it to forbear.  *See Curtis*, 758 F. Supp. 2d at 173-74 ("Should plaintiff['s] vague allegations of 'phony' and 'frivolous' litigation, 'suborned perjury' and 'deceit of court' have merit, plaintiff[] should direct such claims to the . . . court[] where these acts are allegedly occurring and where the underlying litigation is still pending."); *Kim*, 884 F.3d at 104 ("permitting RICO [claims based on litigation activity] would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them").  Indeed, each of the alleged acts of misconduct in the ongoing New Jersey Action that form the basis for the RICO claims *here* is being actively litigated by Plaintiff and Motley Rice in *that forum*.  In particular, in filings he cites in the Amended Complaint, Plaintiff has claimed to the court in the New Jersey Action that:

- Motley Rice employed the JTTF Agents without "authoriz[ation]" from the government, that Motley Rice improperly obtained confidential government information outside the Touhy process, and that Motley Rice used this information in drafting the claims against Plaintiff (*see* Balin Decl. Ex. D at 1-10; Ex. E; Ex. F at 3);

- the Former JTTF Agents improperly disclosed Rudra's confidential identity to

---

plaintiff seeks to premise a RICO claim on nothing more than a run-of-the-mill prosecution of civil claims.  *Curtis*, 758 F. Supp. 2d at 175-76.  *See also Nakahara*, 1998 WL 35123, at *9.

Motley Rice (*see* Balin Decl. Ex. D at 6-7);

● Motley Rice improperly withheld the identities of the Former JTTF Agents and Rudra, as well as discovery materials, in the New Jersey Action (*see* Balin Decl. Ex. D at 1-4; Ex. F at 2);

● Motley Rice made improper payments to Rudra in exchange for testimony and government documents (*see* Balin Decl. Ex. F at 2-3); and

● Motley Rice made false or misleading statements in court filings, including the allegedly false allegations in the original complaint concerning Plaintiff's speech at the November 2002 Event (*see* Balin Decl. Ex. D at 8; Ex. E; Ex. F at 3).[11]

Plaintiff's attempts to litigate the *exact same set of issues* in two different federal District Courts under the guise of a RICO action cannot be countenanced.

Similarly, Plaintiff's attempt to plead RICO predicate acts based on alleged false and defamatory statements in the 2009 Press Release, and made by Rudra and to Kanetkar in the *Vanity Fair* Article, also fail as a matter of law.  Am. Compl. ¶¶ 97-98, 107.  It is well established that "defamation and many other similar allegations do not provide the requisite predicate for RICO violations."  *Kimm v. Lee*, 2005 WL 89386, at *5.  *See also Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989) (a defamation charge is "insufficien[t] . . . as a RICO predicate act," notwithstanding plaintiff's argument that the defamation claim should be read as pleading mail or wire fraud); *Conte*, 703 F. Supp. 2d at 138, n.8; *Curtis*, 758 F. Supp. 2d at 169 n.19.

In *Kimm v. Lee*, for example, the court squarely held that allegations of mail and wire fraud which "consist[ed] solely of the alleged transmission of false information to 'destroy [plaintiff's] professional name and reputation" were merely "thinly clothed defamation claims," and could not constitute RICO predicate acts.  2005 WL 89386, at *4.  The court reasoned that

---

[11] *See also Krishanthi v. Rajaratnam*, No. 09-cv-05395-JLL-JAD, ECF Nos. 282-1 and 331, 328, 359 and 365, 389 (D.N.J. filed Oct. 22, 2009); Balin Decl. Ex. B.

mail or wire fraud requires more than a false statement and reputational injury; it requires "'[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right," as well as actual "reli[ance] upon the allegedly false statements." *Id.* (quoting *Chovanes v. Thoroughbred Racing Ass'n*, No. Civ. A. 99-185, 2001 WL 43780, at *5 (E.D. Pa. Jan. 18, 2001)). Plaintiff's allegation that he was defamed by false statements in the 2009 Press Release and in the *Vanity Fair* Article (even when coupled with Plaintiff's absurd contention that *Vanity Fair* posting the Article on its website constituted wire fraud *by Motley Rice*) simply cannot state a cognizable predicate act.

## B.   Plaintiff Has Not Alleged Cognizable Injury Caused by Defendants' Actions

Plaintiff's RICO claims also fail for the independent reason that he has not alleged a cognizable injury under the RICO statute. To state a civil RICO claim, a plaintiff must not only allege that the defendant committed a substantive RICO violation, but that he was "injured in his business or property by reason of [such] violation." 18 U.S.C. § 1964(c). To satisfy this element "a plaintiff's injury must be both factually and proximately caused by a defendant's violation of section 1962." *DeFalco*, 244 F.3d at 329. In other words, there must be a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). *See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) ("the compensable injury flowing from a [RICO] violation . . . necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern").

Here, Plaintiff's alleged injuries consist of the loss of "substantial commercial and investment opportunities," the blocked return of "millions of dollars held in Sri Lanka," and the cost of defending the New Jersey Action. Am. Compl. ¶ 163. The first two categories clearly fail to satisfy proximate cause. The conduct of third parties in deciding not to engage in business with Plaintiff—a convicted felon—is a decision *wholly independent* from the

14

challenged "RICO activities" of Motley Rice.  Plaintiff's attempt to place the blame with Motley

Rice is tenuous to say the least.  *See Empire Merchants, LLC v. Reliable Churchill LLLP*, 902

F.3d 132, 142 (2d Cir. 2018) ("Perhaps the smuggling operation led New York retailers to

purchase less liquor from Empire, but the decisions of . . . various retailers not to purchase

Empire's liquor were not themselves acts of racketeering").  Injury to reputation is not a

compensable RICO injury, *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458–

59 (S.D.N.Y. 2004), *order amended* (Oct. 28, 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006), and,

in any event, Motley Rice has no control over third parties' business decisions.  *Anza*, 547 U.S.

at 459 (no standing where the alleged "lost sales could have resulted from factors other than

petitioners' alleged acts of fraud" upon the government).  Nor is there any allegation that Motley

Rice derived any benefit therefrom.  Plaintiff does not, and cannot, allege facts necessary to

overcome the long and tenuous string of assumptions necessary to link the purported litigation

misconduct by Motley Rice to Plaintiff's alleged lost business opportunities.

Similarly, a plaintiff's increased legal fees are not considered injury to "business or

property" where, as here, the plaintiff has not sufficiently pled they were proximately caused by

the actual RICO violation alleged.  *See, e.g.*, *Kimm v. Chang Hoon Lee & Champ, Inc*., 196 F.

App'x 14, 16 (2d Cir. 2006) (finding plaintiff lacked standing under RICO where the only

injuries alleged were reputational harm and legal fees that were not a "foreseeable and natural

consequence" of the RICO violation alleged); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842

(S.D.N.Y. 1991) ("it cannot reasonably be suggested that the harm contemplated by the alleged

fraudulent scheme was an increase in [plaintiff's] attorneys' fees.").  It borders on absurd to

suggest that Plaintiff's $6 million in claimed damages were the "foreseeable and natural

consequence" of Motley Rice's preemptive receipt of government documents (which would have

15

been otherwise obtainable via *Touhy* requests), misrepresentations in court filings, or improper

reimbursement of expenses to a witness.  Indeed, Plaintiff insists repeatedly that Motley Rice's

aim in bringing the New Jersey Action was to secure a "quick settlement," not to engage in a

decade-plus litigation.  Am. Compl. ¶¶ 10-11, 89, 97.

### 1.   The Pre-2006 Acts Caused Plaintiff No Injury at All

Nor can Plaintiff credibly argue that the pre-2006 Acts alleged in the Amended

Complaint—which had nothing to do with Plaintiff—proximately caused him any cognizable

RICO injury.  In fact, Plaintiff lacks any standing to recover under civil RICO based on those

allegations.  "[I]n order to establish standing, [Plaintiff] must show that the damage to his

business or property resulted from . . . the predicate acts constituting the violation in this case."

*Burdick v. Am. Exp. Co.*, 865 F.2d 527, 529 (2d Cir. 1989).  This basic principle that a civil

RICO plaintiff can only sue for acts injuring *him* has been reaffirmed time and time again.  *See*

*Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir.), *cert. denied*, 506 U.S. 832 (1992)(noting that

plaintiff "cannot complain about harm to [other entities]"); *Committee to Defend the United*

*States Constitution v. Moon*, 776 F. Supp. 568, 571-72 (D.D.C. 1991) (court would "only

consider those acts which have resulted in business or property harm to the [plaintiff]," and

plaintiff's claim of harm based on acts perpetuated against others was "simply too remotely

related" to support a RICO claim); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-CV-

02824-JST, 2019 WL 281370, at *15 (N.D. Cal. Jan. 22, 2019) ("A plaintiff has standing to

bring suit under RICO only if the alleged RICO violation was the proximate cause of the

*plaintiff's* injury.") (emphasis added).  The Amended Complaint makes no attempt to allege (nor

could it) that any of the pre-2006 Acts caused *Plaintiff* injury, and Plaintiff thus cannot premise a

RICO claim upon these acts.  In sum, dismissal is mandated both because the Amended

4839-6285-8637v.9 0111362-000001

Complaint fails to allege any cognizable "predicate acts" related to Plaintiff or any injury to Plaintiff proximately caused by the alleged predicate acts.

**C.     The Amended Complaint Fails to Plausibly Plead That Any of the Acts Relating to Plaintiff Constituted Criminal Offenses**

The Amended Complaint should also be dismissed because the four sets of acts Plaintiff alleges injured him do not constitute the criminal offenses alleged.  The Amended Complaint's failure to plead a "predicate act" injuring Plaintiff is a further reason to dismiss the RICO claim.

**1.     Wire Fraud**

"The 'essential elements of' both [mail and wire fraud] offenses are '(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'"  *U.S. v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (citation omitted).  *See also Kimm v. Lee*, 2005 WL 89386, at *4 (an actionable wire or mail fraud claim requires "[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.") (quoting *Chovanes*, 2001 WL 43780, at *5).  The Amended Complaint's allegations of wire fraud involving the *Vanity Fair* Article, the 2009 Press Release, and the New Jersey Action fall far short of these pleading requirements.  Indeed, the mere allegation that Motley Rice committed wire fraud because *Vanity Fair*, like virtually all magazines and newspapers, publishes its articles online is absurd on its face.  And the Amended Complaint does not, and obviously cannot, allege that the *Vanity Fair* Article or the 2009 Press Release was published with the intent by Motley Rice of inducing Rajaratnam or anyone else to "part with some valuable thing belonging to him or to surrender a legal right," or that anyone relied on these publications and was so induced.  *Kimm v. Lee*, 2005 WL 89386, at *4.  Indeed, if the publication of a false and harmful statement was sufficient to state a claim for wire fraud, every defamatory publication would automatically be a federal

17

crime. Without the elements of inducement and reliance, Plaintiffs' wire fraud claims fail.

Similarly, the Amended Complaint does not (and again cannot) plausibly allege that the challenged statements made in Motley Rice's electronically-filed submissions to the federal court in New Jersey—namely, that Rudra was not unlawfully paid, Am. Compl. ¶¶ 132-37; that the information used in the lawsuit was not unlawfully acquired, *id*. ¶¶ 138-44; that Motley Rice was "not involved in the creation or 'orchestration' of the *Vanity Fair* [A]rticle,'" *id*. ¶¶ 145-47; and that Plaintiff made statements in support of terrorism at the November 2002 Event (as alleged in Motley Rice's initial complaint (*id*. ¶¶ 148-52))—were intended to induce reliance by anyone, in order to induce that person to surrender money, property or a legal right.[12]

### 2.   Witness Tampering/Bribery

The third act Plaintiff alleges injured him in the New Jersey Action is Motley Rice's payment to Rudra of either "over $75,000" or "roughly $40,000" in expense reimbursements. Am. Compl. ¶¶ 91-92, 115.  Plaintiff also claims, though without any factual allegations in support, that Motley Rice "gave, offered, or promised [Rudra] additional things of value," and otherwise "corruptly persuaded, or attempted to persuade Rudra to cooperate" as well as to withhold discovery documents from Plaintiff.  *Id*. ¶¶ 93, 96, 131.

As a threshold matter, the federal bribery statute specifically allows for reimbursement of a witness's "reasonable cost of travel and subsistence incurred and the reasonable value of time lost"—a provision federal courts acknowledge encompasses reasonable expenses incurred

---

[12] Plaintiff's wire fraud claims are also not pled with the requisite particularity required for fraud claims.  *Curtis*, 758 F. Supp. 2d at 167 ("where, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, a plaintiff must additionally satisfy the particularity requirements of . . . Rule 9(b)").  To adequately state a mail or wire fraud predicate act under RICO, a plaintiff must "identify the fraudulent communications, their contents, who made the communications, where and when the communications were made, and why the communications were fraudulent." *Id*. at 176.  *See also Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999).  Moreover, a plaintiff "must also identify the purpose of the mailing within the defendant's fraudulent scheme [and] 'must allege facts that give rise to a strong inference of fraudulent intent.'" *Id*.  at 173. (citations omitted). The Complaint falls far short of these requirements.

through even non-testimonial participation in a litigation.  *See Prasad v. MML Inv'rs Servs., Inc.*,
No. 04 Civ. 380 (RWS), 2004 WL 1151735, at *5–6 (S.D.N.Y. May 24, 2004) ("federal courts . .
. are generally in agreement that a witness may properly receive payment related to the witness'
expenses and reimbursement for time lost associated with the litigation") (citing cases); *New
York v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) ("[T]he court finds nothing
improper in the reimbursement of expenses incurred by [the witness] in travelling to New York
to provide [a party] factual information, or in the payment of a reasonable hourly fee for [his]
time.").  As Plaintiff acknowledges, Rudra is "believed currently to be a resident of Sri Lanka."
Am. Compl. ¶ 22.  While the Amended Complaint assumes that the expenses Motley Rice
reimbursed to Rudra exceeded what is allowable under the law, this conclusory assumption
carries no weight.  Given the distance between Sri Lanka and New Jersey, the expense of
international flights, and the cost of living arrangements and "subsistence" during any trip to the
United States to provide information for purposes of the New Jersey Action, and the reasonable
hourly fee for Rudra's time, $40,000, or even $75,000 paid across *seven years* bears not the
slightest whiff of impropriety on its own.  Without more, Plaintiff cannot plausibly allege a
violation of the federal bribery statute.  *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts
that are 'merely consistent with' a defendant's liability, it 'stops short of the line between
possibility and plausibility of 'entitlement to relief.'") (citation omitted); *Arista Records, LLC v.
Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (allegations that are "doctrinally consistent with lawful
conduct" do not satisfy federal pleading standards for wrongdoing).

Nor are the Amended Complaint's allegations saved by the bare recitation of other
witness tampering statutes.  Under federal pleading standards, "a formulaic recitation of the
elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Plaintiff attempts to

19

allege that Motley Rice suborned perjury, but the Amended Complaint fails to identify even a

single false statement in Rudra's sworn testimony.  The Amended Complaint also claims that

Motley Rice "corruptly persuaded" Rudra to withhold documents in discovery, but also admits

that Rudra produced these discovery documents once the New Jersey Court ordered his identity

to be disclosed, and "[s]hortly []after" he retained counsel – i.e., at precisely the time one would

expect a witness to produce documents.  Am. Compl. ¶¶ 114, 117.  The Amended Complaint

also fails to identify any discovery requests the Former JTTF Agents failed to comply with due

to Motley Rice's "persua[sion]."  In short, the Amended Complaint proposes, on information and

belief alone, and without any plausible factual foundation, that "the evidence will show" that

tampering and corrupt persuasion occurred.  *Id.* ¶ 130.  This is insufficient to state a claim.

### 3.      Receipt of FBI Documents

Finally, the Amended Complaint implausibly claims that, in violation of federal statutes

prohibiting interstate transport of stolen property, Motley Rice received and transported FBI

documents Rudra had "obtained while working on behalf of the FBI" or had "requested . . .

outside the *Touhy* process," and "compensated Rudra" for them.  *Id.* ¶¶ 75, 77, 78, 141.[13]

First, the Amended Complaint fails to allege with any specificity if, or how, the allegedly

"stolen" FBI documents were transported, transferred, or transmitted in interstate commerce, as

required to state a claim under 18 U.S.C. §§ 2314 & 2315.  *Colony at Holbrook, Inc. v. Strata*

*C.G., Inc.*, No. 95 CV 913(NG), 1999 WL 172350, at *3 (E.D.N.Y. Mar. 25, 1999).  The alleged

---

[13] Seeking in invoke the relevant criminal statutes, the Amended Complaint bizarrely avers that the FBI documents had a value in excess of $5,000 or $10,000.  Am. Compl. ¶¶ 75, 76, 78, 141; 18 U.S.C. §§ 2314, 2315, 1957.  The conclusory "value" Plaintiff attempts to assign to these documents has no plausible basis:  The alleged documents have no inherent market value (unlike goods or merchandise, the typical subject of stolen property claims), nor can Plaintiff point to any actual transaction involving these documents sufficient to give them a valuation.  Indeed, while the Amended Complaint alleges Motley Rice made "unlawful payments" for the documents, it identifies no actual payments to Rudra except those made to reimburse unrelated expenses.  *See* Am. Compl. ¶ 91.

predicate acts fail for this reason alone.  *See Muscletech Research & Dev., Inc. v. E. Coast*

*Ingredients, LLC*, No. 00-CV-0753A(F), 2004 WL 941815, at *20 (W.D.N.Y. Mar. 25,

2004), *R&R adopted in part*, No. 00-CV-753A, 2004 WL 2191578 (W.D.N.Y. Sept. 27, 2004)

(no Stolen Property Act predicate act alleged where the complaint failed to plead "how the stolen

goods were transported in interstate or foreign commerce").

Second, Plaintiff fails to allege that documents in question were in fact "stolen, converted

or taken by fraud."  18 U.S.C. § 2314 ("Transportation of stolen goods").  *See also* 18 U.S.C. §

2315 ("Sale or receipt of stolen goods"); 18 U.S.C. § 1957(a), (f) ("Engaging in monetary

transactions" in "criminally derived property").  Plaintiff claims the FBI documents were

"stolen" because they were not produced pursuant to the *Touhy* process – presumably

referencing 28 C.F.R. § 16.22, a Department of Justice regulation prohibiting the production of

DOJ materials in a civil proceeding except via *Touhy* requests.  Yet this regulation does not

criminalize or create a civil cause of action for such non-*Touhy* productions of material, and

Motley Rice cannot find a *single* case applying *any* of the federal stolen property statutes at issue

to the disclosure or receipt of documents in violation of 28 C.F.R. § 16.22.

Moreover, the Supreme Court has clarified that for materials to come within the ambit of

stolen property laws, there must be "a physical identity between the items unlawfully obtained

and those eventually transported, and hence some prior physical taking of the subject goods."

*Dowling v. United States*, 473 U.S. 207, 216 (1985).  At best, Plaintiff has alleged that Rudra

provided Motley Rice unauthorized *copies* of FBI documents and/or materials, not that he

*physically took* the original documents from the FBI and provided Motley Rice those original

physical documents.  Even assuming the government had right in the content of the documents—

such a violation of intangible property rights is not sufficient.  *See id.*; *United States v. Brown*,

925 F.2d 1301, 1308 (10th Cir. 1991) (Sections 2314 and 2315 cannot apply to unlawfully copied source code since the alleged theft lacked the "critical" "element of *physical* 'goods, wares, or merchandise'") (emphasis added).[14]

In sum, the Amended Complaint does not adequately allege that any of the challenged acts by Motley Rice relating to Plaintiff constituted criminal offenses.  This failure to plead a cognizable "predicate act" warrants dismissal of the RICO claims.

**D.       The Amended Complaint Fails to Plead a "Pattern of Racketeering Activity"**

The Amended Complaint also fails entirely to allege a plausible "pattern" of racketeering activity.  Indeed, Plaintiff's attempt to plead a "pattern" by relying on wholly unrelated conduct that occurred years (and in some cases decades) before the 2009 New Jersey Action should be swiftly rejected.  The Supreme Court has held that to prove a "pattern of racketeering activity, a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F. 3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc.*, 492 U.S. at 240).

The Second Circuit has made clear that to "form a pattern of racketeering activity . . . predicate acts 'must be related to each other . . . [and] to the enterprise." *United States v.*

---

[14] The Amended Complaint also fails to state the elements of 18 U.S.C. § 1957, a statute which criminalizes certain "monetary transaction[s]" in "criminally derived property"—i.e. "any property constituting, or derived from, proceeds obtained from a criminal offense."  18 U.S.C. § 1957(a), (f)(2).  While the Amended Complaint conclusorily alleges a transaction in the FBI documents, it does not allege that any of the proceeds allegedly used in that transaction were obtained or derived from a criminal offense. *See United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994) (holding that "the proceeds of a crime [must] be in the defendant's possession before he can attempt to transfer those proceeds in violation of § 1957").  Indeed, the Amended Complaint makes clear that Motley Rice has not succeeded in "leverag[ing] the hoped-for settlement" from Rajaratnam, meaning there *are no* proceeds from its supposed "scheme" against him.

*Vernace*, 811 F.3d 609, 615 (2d Cir. 2016).  It is not sufficient for a plaintiff to simply list other examples of "wrongdoing" by the defendant, where, as here, the acts and the circumstances in which they occurred have no clear connection.  *See United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) ("the pattern requirement should be interpreted to prevent the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts.") (citation omitted).

In *Reich v. Lopez*, 858 F.3d 55, 58 (2d Cir.), *cert. denied*, 138 S. Ct. 282 (2017), for example, the plaintiff alleged that the defendant, a Venezuelan energy company, had "stolen billions of dollars from the Venezuelan government" by "brib[ing] Venezuelan officials in order to secure energy contracts at inflated rates without public bidding." *Id*.  Plaintiff, a former diplomat and consultant focused on anti-corruption, also alleged that the defendant's principals also targeted him for representing a company that was "threatening to expose [defendant's] criminal activities," and induced two of his clients to part ways with him (constituting wire fraud). *Id*.  In affirming the lower court's grant of dismissal, the Second Circuit held these two sets of acts had dissimilar "victims," means, and "results" and therefore did not satisfy RICO's pattern requirement. *Id*. at 62. *See also In re Basic Food Grp. LLC*, No. 15–10892(JLG), 2016 WL 3677673, at *10 (Bankr. S.D.N.Y. July 1, 2016) (acts "directed at individuals who are not plaintiffs herein, in connection with three other, separate transactions" were not "related" merely because they demonstrated the "illegitimate purposes" of the alleged RICO enterprise); *Bernstein v. Misk*, 948 F. Supp. 228, 237 (E.D.N.Y. 1997) (finding allegations of bank fraud bore "almost no relation" to the acts which allegedly injured plaintiffs and could not be considered as part of "pattern" of racketeering activity); *Ray Larsen Assocs., Inc. v. Nikko America, Inc*., No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *6–7 (S.D.N.Y. Aug. 6, 1996) (finding no relationship between allegations that defendants siphoned funds to defraud IRS and allegations that defendants made

23

fraudulent misrepresentations to plaintiff).

Here, Plaintiff has not pled any plausible relationship between the alleged New Jersey Action related predicate acts *and* the pre-2006 Acts—which principally involved supposedly dubious methods used by Motley Rice investigator Michael Asimos to gather information to "secure profitable government contracts and—even better—sell the information . . . to commercial customers." *See* Am. Compl. ¶¶ 55, 43-60. Nor could Plaintiff even hope to claim some connection between the alleged New Jersey Action predicate acts and the more obscure Pre-2006 Acts, including "threats" Ness Motley lawyers allegedly made to quash a 90s'-era bill relating to asbestos litigation (notably, Elsner did not even finish law school until 1998), *id.* ¶ 33, or Motley Rice's alleged role in luring a "notorious Afghan drug lord" to the U.S. on behalf of the DEA. *Id.* ¶¶ 68-71.

In sum, on their face the acts Plaintiff challenges in the New Jersey Action and the pre-2006 Acts bear absolutely no relationship to each other, and the RICO claim cannot be premised on a combination of these two sets of unrelated acts.

**E.      Plaintiff's RICO Claims Are Barred by the Statute of Limitations**

RICO claims are subject to a four-year statute of limitations, running from the date the plaintiff discovered, or should have discovered, his injury. *Koch v. Christie's Int'l PLC, A U.K.*, 699 F.3d 141, 148, 150 (2d. Cir. 2012). The clock begins running "when a reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence." *Id.* at 153. This principle of inquiry notice is often called "storm warnings" and is judged using an objective standard. *Id.* Even where a "pattern of predicate acts may well be complex, concealed, or fraudulent," it nonetheless is "discovery of the injury, not discovery of the other elements of a claim [which] starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555-56 (2000). Whether plaintiff had inquiry notice of his injury may be decided by the court. *Staehr v. Hartford Fin.*

24

*Servs. Grp. Inc.*, 547 F.3d 406, 427 (2d Cir. 2008).

The Amended Complaint alleges Plaintiff was injured by Motley Rice "manufactur[ing]" a lawsuit against him premised on the "false allegation" that he knowingly funded terrorist activity in Sri Lanka (Am. Compl. ¶ 10), as part of the firm's efforts to "wrongfully obtain money from [Plaintiff]." *Id.* ¶ 13. Plaintiff's principal injury was thus suffered when the New Jersey Action was filed on October 22, 2009, more than eight years before Plaintiff initiated this suit. *Id.* ¶ 85. Even crediting the allegations that the New Jersey Action against Plaintiff is meritless, and Plaintiff never "knowingly provided funds for the purpose of supporting terrorist activity in Sri Lanka" (*id.* ¶ 10), Plaintiff would have known this from the outset given that the allegations concerned his *own* conduct and statements. Indeed, Plaintiff claims that the very first complaint filed by Motley Rice in 2009 contained flatly "false" allegations about the content of a speech Plaintiff himself made at a fundraiser in 2002. *Id.* ¶ 86. If these allegations were false, no individual had more reason to know that than Plaintiff—regardless of whether Motley Rice's allegations were derived from "unlawfully obtain[ed]" government documents. *Id.* ¶ 13.[15] Even assuming—though to do so strains reason—that Plaintiff was not fully aware that Motley Rice's claims against him were frivolous until he learned further information about the *source* of the information in the New Jersey Action complaint, his knowledge of the falsity of the allegations against him would at minimum have put him on inquiry notice that the New Jersey Action had been improperly initiated. Accordingly, Plaintiff's RICO claim is time-barred.[16]

---

[15] The Amended Complaint avers that Plaintiff "lacked the means to disprove" the allegations because he did not possess the recording of the event he claims Motley Rice had in its possession. *Id.* ¶ 88. This allegation ignores both that it is *Motley Rice's* burden to *prove* the statements, not Plaintiff's to disprove them, and that many of the no doubt numerous attendees of the 2002 fundraiser, which "marked the 25th anniversary of the Ilankai Tamil Sangam" association of Tamil Americans, could have acted as witnesses in Plaintiff's favor. *See* Am. Compl. ¶ 86. Plaintiff was hardly without means to disprove this claim.

[16] The Amended Complaint speculates that Motley Rice obtained a trove of FBI documents and information from Rudra and the Former JTTF Agents for use in the New Jersey Action, and avers that Plaintiff did not learn the source of this information until 2016. Am. Compl. ¶¶ 73-77, 111-114. However, Plaintiff has not alleged any

The Amended Complaint also claims Plaintiff suffered reputational damages by reason of allegedly false statements in the *Vanity Fair* Article—which the Amended Complaint characterizes as having been in furtherance of a "scheme to wrongfully obtain money from" Plaintiff.  *Id*. ¶ 106.  This additional alleged injury was suffered on the date the *Vanity Fair* Article was published, September 30, 2011—more than six years before Plaintiff initiated this lawsuit.  *See id*. ¶ 100.  Again, even accepting *arguendo* that the statements complained of in the *Vanity Fair* Article were false, Plaintiff had every reason to be aware of that upon the article's date of publication in 2011.

## II.   PLAINTIFF'S DEFAMATION CLAIM IS TIME-BARRED

The Court should exercise its discretion to retain supplemental jurisdiction over and also dismiss Plaintiff's pendent state law defamation claim because it is time-barred.  Where, as here, the correct disposition of state law claims is so clear that they can be "determined without further trial proceedings and without entanglement with any difficult issues of state law, [] considerations of judicial economy warrant [] retention and decision rather than relinquishment of the case to the state court."  *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (citation omitted).[17]  As set forth below, Plaintiff's defamation claim was filed years after the governing one-year statute of limitations had expired and is therefore

---

discernable connection between the alleged improper disclosure of this FBI information and the injuries he allegedly suffered.  Plaintiff has not claimed that the purported FBI documents contained false information or that any allegations in the New Jersey Action drawn from the FBI documents should not have formed the basis for claims asserted against him.  In sum, Plaintiff has not pled any RICO injury arising from Motley Rice's claimed use of FBI information in the New Jersey Action, and therefore cannot point to a separate accrual date for the statute of limitations on his claim.

[17] Motley Rice recognizes that this Court declined to exercise supplemental jurisdiction in *Curtis*, 758 F. Supp. 2d at 180, but notes that in that case the pendent state law claims involved "various New York statutory and common law causes of action."  *Id*. at 157.  Here, by contrast, Plaintiff asserts only a single state law claim, which may be resolved purely on statute of limitations grounds.  *See, e.g.*, *Skeene v. City of New York*, No. 14-cv-6054 (ENV) (CLP), 2016 WL 927182, at *3 (E.D.N.Y. Mar. 7, 2016) (exercising supplemental jurisdiction over pendent state law claim for purposes of dismissing that claim as time-barred); *Cullen v. City of New York*, No. 07–CV–3644 (CBA)(JMA), 2011 WL 1578581, at *6 (E.D.N.Y. Apr. 26, 2011) (same).

untimely on its face.  Moreover, in the interest of efficiency, the parties have all consented to

have the state law defamation claim decided together with the RICO claims (*see* Dkt. No. 25),

and there is no need for the Court to delay resolution of this action by remanding this single

pendent claim to state court.  Such a result would only burden the state court (and Defendants)

with needless re-briefing of an easily disposable issue.

**A.**     **New York's One-Year Statute of Limitations Has Long-Since Run**

Pursuant to CPLR 215(3), an action for libel must be commenced within one year after

publication of the statements at issue.  *See Toomey v. Farley*, 2 N.Y.2d 71, 79 (1956); *Firth v.

State*, 184 Misc. 2d 105, 112 (N.Y. Ct. Cl. 2000), *aff'd*, 287 A.D.2d 771 (3d Dep't 2001), *aff'd*,

98 N.Y.2d 365 (2002); *David J. Gold, P.C. v. Berkin*, No. 00 Civ. 7940 (AGS), 2001 WL

121940, at *3 (S.D.N.Y. Feb. 13, 2001).  This one-year limitations period is strict.  New York

law follows the single publication rule, under which an action for defamation accrues on the date

of original publication of, for instance, a magazine, notwithstanding that additional copies may

have been later sold or circulated.  *See Gregoire v. G. P. Putnam's Sons*, 298 N.Y. 119, 123

(1948).  The single publication rule also applies to online publications, meaning that claims for

such publications accrue on the date of the original posting.  *See Firth v. State*, 98 N.Y.2d 365,

370 (2002).  Accordingly, the one-year statute of limitations governing Plaintiff's defamation

claim began to run on September 30, 2011, when the *Vanity Fair* Article was published (Am.

Compl. ¶ 100), and expired on September 30, 2012.  The parties have stipulated in this action

that the limitations period for Plaintiff's defamation claim would be tolled between his

commencement of suit in New York Supreme Court on November 14, 2017 and his

27

commencement of this federal action on June 1, 2018.[18]  Since Plaintiff did not file his

defamation claim until November 2017, more than five years after the statute of limitations had

run, his defamation claim is unmistakably time-barred.

**B.      There Is No Basis to Toll the Statute of Limitations**

Plaintiff has not alleged any valid basis for tolling the one-year statute.  Plaintiff avers

"he did not learn" the "identity of Rudra" or that Rudra and Kanetkar, in making the challenged

*Vanity Fair* statements, were allegedly "acting at the direction of Motley Rice" until November

14, 2016.  Am. Compl. ¶¶ 196-97.  But New York law does *not* recognize a discovery rule with

respect to defamation claims.  *See Teneriello v. Travelers Cos.*, 226 A.D.2d 1137, 1138 (4th

Dep't 1996) ("Contrary to [the] plaintiff's contention, the action accrued when the statements

were originally published . . . , not upon [the] plaintiff's discovery of the statements two years

later."); *Karam v. First Am. Bank of N.Y.*, 190 A.D.2d 1017, 1018 (1993) ("In an action for

slander, the [s]tatute of [l]imitations runs from the time of the utterance, not the discovery of the

slanderous matter.").[19]

Indeed, New York courts are clear that the limitations period for allegedly libelous

statements begins running upon publication even where statements were made anonymously or

where the plaintiff cannot identify a potential defendant.  *See LeBlanc v. Skinner*, 103 A.D.3d

202, 208 (2d Dep't 2012); *Byramain v. Stevenson*, 278 A.D.2d 619 (3d Dep't 2000); *Mandell v.*

*Terminal Beauty Shops, Inc.*, 23 Misc. 2d 205, 206 (Sup. Ct. N.Y. Cty. 1960).

Here, Plaintiff does not (and cannot) claim that he was unaware of the *Vanity Fair* Article

---

[18] As a component of this stipulation, Plaintiff also agreed to voluntarily dismiss the state court action, so as to avoid having the defamation claim litigated simultaneously in federal and state courts.  *See* Dkt. No. 25.

[19] Federal courts in New York apply the state's tolling principles when calculating the start of the statute of limitations for state law claims, including defamation claims.  *See Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989); *Hanly v. Powell Goldstein, LLP*, 290 F. App'x 435, 439 (2d Cir. 2008).

when it was published.  Moreover, he admits that Kanetkar and Rudra were both plainly

identified in the article as the speakers of the statements that Plaintiff claims were false and

defamatory.  *See* Am. Compl. ¶¶ 100-03.  Plaintiff's allegation that he did not learn until 2016

that Kanetkar/Rudra were supposedly "acting at the direction of Motley Rice" (*id.* ¶¶ 196-97)

does not, as a matter of law, save his time-barred defamation claim from dismissal.[20]

Plaintiff avers that Motley Rice "[f]raudulently [c]oncealed" its "orchestration" of the

*Vanity Fair* Article, apparently in an effort to invoke equitable tolling.  *Id.* ¶ 145.  But to benefit

from equitable tolling, a plaintiff must plead "(1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way and prevented timely filing."

*Chisolm v. City of New York*, No. 17-CV-5327 (MKB), 2018 WL 3336451, at \*5 (E.D.N.Y. July

6, 2018) (holding equitable tolling was not available where "the Complaint alleges no facts" in

support of these components) (quoting *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010).

*See also Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) ("[e]quitable tolling requires a

party to pass with reasonable diligence through the period it seeks to have tolled").

Plaintiff has alleged no facts from which the Court could conclude that he exercised such

"reasonable diligence" much less that "some extraordinary circumstance stood in his way."

*Chisolm*, 2018 WL 3336451, at \*5.  Indeed, Plaintiff does not allege that he engaged in *any*

efforts at all to pursue his defamation claim within the limitations period:  He does not allege that

he attempted to contact *Vanity Fair* regarding the Article, that he pursued legal action against

---

[20] Indeed, New York law recognizes the "relation back" doctrine which allows a defamation plaintiff who has timely commenced suit against one defendant to toll the statute of limitations and add additional parties as defendants as their identities become known.  *See Buran v. Coupal*, 87 N.Y.2d 173, 177–78 (1995); *LeBlanc v. Skinner*, 103 A.D.3d at 208 (2d Dep't 2012); *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26 (2d Dep't 2009). Accordingly, even if—as Plaintiff contends—Motley Rice was somehow responsible for the statements by Kanetkar and Rudra in the *Vanity Fair* Article, this does not allow him to toll his claims against Motley Rice, because he did not timely commence suit against any other defendant.

Kanetkar or Rudra, or that he diligently sought to determine whether Kanetkar or Rudra made their quoted statements as agents for anyone else.  Accordingly, Plaintiff has failed to make any showing that he is entitled to equitable tolling.[21]

Moreover, fraudulent concealment—the sole basis Plaintiff appears to allege in support of his equitable tolling argument—can *only* operate to toll the statute of limitations on a claim where the concealment caused the plaintiff to be "ignorant of his cause of action."  *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986).[22]  Any cause of action Plaintiff may have had arising from the *Vanity Fair* Article would have been apparent upon its publication.  He was fully capable of evaluating whether it contained false and defamatory statements of fact concerning him, and if Plaintiff, as he claims, suffered reputational injury by virtue of those false statements, that injury also would have been known to Plaintiff regardless of whether Kanetkar or Rudra were "acting at the direction of Motley Rice," as Plaintiff contends.  Am. Compl. ¶¶ 196-97.  Plaintiff has not pled any facts that show he diligently pursued this claim during the limitations period.  Accordingly, the defamation claim must be dismissed as time-barred.

## CONCLUSION

For all the reasons set forth herein, Defendants respectfully request that the Amended Complaint be dismissed in its entirety with prejudice.

---

[21] Nor could Plaintiff claim that the related doctrine of equitable estoppel bars Motley Rice from asserting a statute of limitations argument.  Estoppel is not available simply because the identity of the responsible party is not immediately disclosed.  Under New York law, "the mere anonymity of" a party does "not constitute active, fraudulent concealment" sufficient to justify equitable estoppel or tolling.  *Gleason v. Spota*, 194 A.D.2d 764, 765 (1993).  Moreover, as with equitable tolling, equitable estoppel is not available where a plaintiff has "timely knowledge" of the allegedly defamatory publication.  From that moment it is the *plaintiff's* duty to determine the proper defendant and bring suit within the limitations period.  *Id.*; *Kotlyarsky v. New York Post*, 195 Misc. 2d 150, 153 (Sup. Ct. Kings Cty. 2003).

[22] Any claim of fraudulent concealment must also comply with the heightened pleading requirements of Rule 9(b), which Plaintiff has not satisfied.  *See Greenwald v. Manko*, 840 F. Supp. 198, 201-02 (E.D.N.Y. 1993); *Glick v. Berk & Michaels, P.C.*, No. 90 Civ. 4230 (CSH), 1991 WL 152614, at *9 (S.D.N.Y. July 26, 1991) (citing *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.), *cert. denied*, 368 U.S. 821 (1961)).

Dated: New York, New York
       April 12, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    */s/ Robert D. Balin*
      Robert D. Balin
      Sharon L. Schneier
      Abigail B. Everdell

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
E-mail: robbalin@dwt.com

*Attorneys for Defendants Motley Rice, LLC and*
*Michael E. Elsner*

31