UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAJ RAJARATNAM, an individual,<br><br>           Plaintiff,<br><br>-against-<br><br>MOTLEY RICE, LLC, a South Carolina limited liability company, MICHAEL E. ELSNER, an individual, JAYAT P. KANETKAR, an individual, RUDRA, an individual named pseudonymously, BRIAN P. MALLON, an individual, and JOHN "HANK" ALLISON, an individual,<br><br>           Defendants. | Case No: 18-cv-3234-KAM-RML |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JTTF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Larry H. Krantz
Lisa A. Cahill
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, NY 10017
(212) 661-0009
*Attorneys for Defendants*
*Jayat P. Kanetkar, Brian P. Mallon, and John "Hank" Allison*

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ....................................................................................... 1

**ARGUMENT** ........................................................................................................................ 2

    **I.**    RAJARATNAM'S OPPOSITION DOES NOT SALVAGE ANY OF THE ALLEGED PREDICATE ACTS AGAINST THE JTTF DEFENDANTS ...............................................................................2

        **A.**  Transportation or Sale of Stolen Property and Money Laundering.............................2

        **B.**  The Remaining Predicate Acts .................................................................................3

    **II.**   RAJARATNAM'S "PATTERN" ARGUMENTS ARE FATALLY FLAWED ........................................................................................5

    **III.**  THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THE JTTF DEFENDANTS DIRECTED THE ENTERPRISE'S AFFAIRS AND PARTICIPATED IN ITS OPERATION OR MANAGEMENT.........................................................................................7

    **IV.**  RAJARATNAM'S RICO CLAIMS ARE TIME BARRED......................................9

**CONCLUSION** ................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bigsby v. Barclays Capital Real Estate, Inc.*,
   298 F. Supp. 3d 708 (S.D.N.Y. 2018) .................................................................................. 7

*Centennial Mgmt. Servs., Inc. v. Axa Re Vie*,
   193 F.R.D. 671 (D. Kan. 2000) ........................................................................................... 4

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
   758 F. Supp. 2d 153 (E.D.N.Y. 2010) ................................................................................. 4

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ................................................................................................ 6

*Dempsey v. Sanders*,
   132 F. Supp. 2d 222 (S.D.N.Y. 2001) ................................................................................. 6

*Flexborrow LLC v. TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) ............................................................................. 1,9

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300 (S.D.N.Y. 2009) ................................................................................. 6

*H.J. Inc. v. Northwestern Bell Telephone Company*,
   492 U.S. 229 (1989) ............................................................................................................ 6

*In Re Vericker*,
   446 F.2d 244 (2d Cir. 1971) ............................................................................................ 2,3

*Lefkowitz v. Bank of N.Y.*,
   No. 01 Civ. 6252(VM), 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003) ............................. 6

*Lefkowitz v. Bank of N.Y.*,
   528 F.3d 102 (2d Cir. 2007) ................................................................................................ 6

*Napoli v. United States*,
   45 F.3d 680 (2d Cir. 1995) .................................................................................................. 8

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ......................................................................................................... 7,8

*United States v. Agarwal*,
   726 F.3d 235 (2d Cir. 2013) ................................................................................................ 3

*United States v. Allen*,
   155 F.3d 35 (2d Cir. 1998) .................................................................................................. 9

*Watral v. Silvernails Farm LLC.*,
   51 Fed.Appx. 62 (2d Cir. 2002) .......................................................................................... 6

**Statutes**

18 U.S.C. § 1957 .................................................................................................................... 2,3

18 U.S.C. § 201 ..................................................................................................................... 3,4

18 U.S.C. § 2314 ................................................................................................................... 2,3

18 U.S.C. § 2315 ................................................................................................................... 2,3

## PRELIMINARY STATEMENT

Plaintiff Raj Rajaratnam ("Rajaratnam") attempts to salvage his Amended Complaint ("Complaint or Compl.") against the JTTF Defendants with tales of elephants, pleas to ignore legal authority in the interest of "policy considerations," and requests that the Complaint's failings be excused because necessary information is "trapped behind" a restrictive confidentiality order ("the DCO") in the related New Jersey federal action ("NJ Action"). These arguments are all unavailing. Indeed, by relying on these diversions and excuses, Rajaratnam merely underscores the deficiencies of his misguided Complaint.[1]

The Complaint should be dismissed because it utterly fails to plead valid RICO claims against the JTTF defendants. Specifically, Rajaratnam's claims are deficient because: (1) he has pled *no* legally viable predicate acts; (2) he has failed to plead a valid pattern of racketeering activity; (3) he has failed to plead plausibly the JTTF Defendants' participation in the "operation or management" of the alleged RICO enterprise (Motley Rice); and (4) his RICO claims are time-barred. In short, like so many other civil RICO lawsuits that are filed, the Complaint is patently deficient and abusive. As Judge Bianco stated in *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017), wherein he granted a motion to dismiss civil RICO claims:

> Courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.' "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" Indeed, although civil RICO may be a "potent

---

[1] Moreover, Rajaratnam's position is particularly galling because he has done nothing to modify the DCO (as to which the JTTF defendants are not even a party) so as to allow him access to the information he claims he so desperately needs, *as he told this Court he would do nearly a year ago*. See Exhibit C to Affirmation of Larry H. Krantz (Trans. Pre-Motion Conference on 9/13/2018) at 6 (The Court: "Why do you not ask the judge there to [modify the DCO so as to permit co-extensive use of the documents here]?" . . . Mr. Lupkin: "We're in the process of doing that, Your Honor.").

> weapon," plaintiffs wielding RICO almost always miss the mark. Accordingly, courts have expressed skepticism toward civil RICO claims.

*Id.* (citations omitted). These words fully resonate here, and the same result should apply.

## ARGUMENT

### I. RAJARATNAM'S OPPOSITION DOES NOT SALVAGE ANY OF THE ALLEGED PREDICATE ACTS AGAINST THE JTTF DEFENDANTS

The substantive RICO claims against the JTTF Defendants must fail because the Complaint contains no plausible allegations they committed *any* RICO predicate acts at all, let alone the two or more required to constitute a "pattern." Rajaratnam's opposition brief ("Opposition" or "Opp.") does nothing to alter this result.

#### A. Transportation or Sale of Stolen Property and Money Laundering

The gravamen of the allegations against the JTTF Defendants is that they shared "non-public" information with Motley Rice, including copies of FBI documents, which was used against Rajaratnam in the NJ Action. Compl. ¶¶ 74-77; Opp. at 25. Rajaratnam asserts that the JTTF Defendants violated 18 U.S.C. §§ 2314-15 (the National Stolen Property Act, "NSPA"), and 18 U.S.C. § 1957 (money laundering violations). Opp. at 23. These alleged predicate acts are the lynchpin of the Complaint against the JTTF Defendants.

In their moving papers, the JTTF Defendants argued that this alleged conduct did not constitute a violation of *any* criminal laws, let alone a violation of the NSPA or the money laundering statute. JTTF Mem. at 5. Indeed, the JTTF Defendants relied on a Second Circuit decision that is *on point and dispositive.* In *In re Vericker,* 446 F.2d 244, 248 (2d Cir. 1971), the Second Circuit held that FBI documents *do not* constitute "goods, wares or merchandise" for purposes of these stolen property statutes, because such documents are not ordinarily "the subject of commerce." JTTF Mem. at 7-9. Remarkably, Rajaratnam's brief ignores *Vericker* and goes off on a meaningless tangent. Specifically, relying on *United States v. Agarwal*, 726 F.3d 235,

2

252 (2d Cir. 2013), Rajaratnam argues that because hard copies of the FBI documents were allegedly transported in a "tangible" rather than "intangible" form, that is sufficient to constitute "goods, wares, or merchandise" within the meaning of the NSPA. *See* Opp. at 24. *This argument is a red herring,* since *Vericker* does not turn on whether the FBI reports at issue are tangible or intangible. The Second Circuit has made clear that documents of this nature cannot support a prosecution under the NSPA because FBI documents are not the type of "personal property or chattels as are ordinarily considered a subject of commerce," as required by the statute. *Vericker,* 446 F.2d at 248. By contrast, the tangible documents at issue in *Agarwal*, confidential bank trading codes, <u>were</u> a subject of commerce, and so—if in tangible form—could satisfy the NSPA. In fact, *Agarwal* recognized this exact distinction:

> [I]n construing the [NSPA's] "goods, wares, [or] merchandise" language, we have stated that these terms denote "such personal property or chattels as are ordinarily a subject of commerce." *Vericker,* 446 F.2d 244, 248 (2d Cir.1971) (Friendly, C.J.). We there recognized that "mere papers" containing maps or chemical formulae could constitute goods or wares because they were "ordinarily subject[s] of sale or license." *Id.* (collecting cases). *But we held that stolen FBI documents did not qualify because there was no evidence that such papers were "ordinarily bought and sold in commerce."*

726 F.3d at 254 (emphasis added).

Based on this bright line distinction, Rajaratnam's central theory against the JTTF Defendants—that copies of FBI documents constitute stolen property—is contrary to the law in this Circuit and cannot support *any* violation under the NSPA. Likewise, any alleged money laundering predicate act must fail because Rajaratnam has not pled any "specified unlawful activity" other than the NSPA violations. *See* 18 U.S.C. § 1957.

### B. The Remaining Predicate Acts

With the NSPA and money laundering predicates eliminated, there is little meat left to the RICO claims against the JTTF Defendants. As to those few remaining predicate acts alleged,

3

the JTTF Defendants rely principally on their moving memorandum. Rajaratnam's Opposition fails meaningfully to rebut the arguments that:

- **As to bribery and witness tampering against the JTTF Defendants**: The bare factual allegation that "Motley Rice *and/or* the [JTTF Defendants]" paid $75,000 to Rudra, between 2009 and 2018, *see* Compl. ¶¶ 90-96 (emphasis added), is woefully inadequate to support a plausible inference that the JTTF Defendants had a corrupt "intent to influence" Rudra's testimony. *See* 18 U.S.C. § 201(b)(3) (requiring a promise of something of value "with intent to influence [a witness's] testimony under oath."). Not only is this inference wholly speculative and unsupported by any facts, it is also implausible given the "safe harbor" for a witness's "reasonable cost of travel and subsistence incurred and reasonable value of time lost." JTTF Mem. at 13. Indeed, it is undisputed that Rudra lives in Sri Lanka, had to travel to the United States to give deposition testimony, and that the payments to him (over 9 years) were supported *by 160 pages of expense records*.[2] Moreover, these bare allegations cannot support a plausible claim of witness tampering.[3]

- **As to wire fraud against the JTTF Defendants (which is governed by Rule 9(b)'s heightened pleading standard)**: The Opposition fails to address the Complaint's dearth of specific allegations against the JTTF Defendants as well as its failure to allege a plausibly pleaded scheme to defraud. In his Complaint, Rajaratnam contends that the JTTF Defendants each submitted false affidavits in connection with the New Jersey litigation, essentially denying that they had improperly paid Rudra. *See* Compl. ¶¶ 132-37. These submissions, however, were clearly protected "litigation activities," and thus cannot serve as the basis for a wire fraud predicate, as this Court held in *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F. Supp. 2d 153, 175 (E.D.N.Y. 2010). JTTF Mem. at 9. Moreover, Rajaratnam offers no plausible explanation as to how these allegedly false affidavits, *making no allegations against Rajaratnam or in support of the affirmative claims against him,* could plausibly support the pleading of a scheme to defraud him of money or property (nor does his Complaint).

- **As to wire fraud against Kanetkar**: The Opposition relies entirely on the allegedly false Vanity Fair article from 2011. These allegations, however, are at best claims of defamation, and may not be transformed into a predicate act of wire fraud. JTTF Mem. at 11.

- **As to bribery against Mallon**: Based on the acts allegedly undertaken in connection with obtaining information from an FBI agent and analyst in 2003 or 2004—which have nothing

---

[2] The publicly available source Rajaratnam cites to for the $75,000 figure, a letter filed by his lawyer in the NJ Action, reflects these expense records. *See* DNJ ECF No. 382 at 2 (Nov. 2, 2018 filed letter from Rajaratnam's counsel) (cited at Compl. ¶¶ 91, 94-95, 115, 120).

[3] In *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, which involved a similar factual circumstance, the district court denied the movants' request for sanctions due to alleged bribery and witness tampering. 193 F.R.D. 671, 681–82 (D. Kan. 2000). The court held that because the "$70,000 paid to [the witness] was for time spent preparing for his deposition, reviewing the deposition transcripts of other witnesses, and reviewing documents produced in the litigation" it fell within the exception under 18 U.S.C. § 201(d). *Id*. at 682.

4

- to do with Rajaratnam—there is no allegation of payment, let alone any other facts sufficient to support an inference of bribery. Compl. ¶¶ 65-66; JTTF Mem. at 12-15.

- **And as to wire fraud against Mallon**: Based on the allegation that he defrauded an Afghan drug lord in 2005 by falsely inducing him to return to the United States, this allegation is patently absurd as the basis for a wire fraud predicate, because it does not involve a scheme to obtain money or property from the victim. Compl. ¶¶ 68-71; JTTF Mem. at 10-12.

In the absence of any validly pleaded predicate acts, the Complaint must be dismissed

## II. RAJARATNAM'S "PATTERN" ARGUMENTS ARE FATALLY FLAWED

Rajaratnam's RICO claims are also fatally deficient as to the JTTF Defendants because he fails to plead a valid RICO pattern. Rajaratnam absurdly contends that in so arguing the JTTF Defendants are asking for a "free pass." Opp. at 33. Of course, this turns the JTTF Defendants' argument on its head. It is not a matter of a "free pass," but rather a matter of requiring a plaintiff to plausibly plead a RICO claim before the case may proceed.

In their moving brief, the JTTF Defendants argued that: (1) as to Allison and Kanetkar—who are not alleged to have participated in anything other than the NJ Action—the Complaint's allegations comprise a "single scheme against a single victim (Rajaratnam)," and therefore cannot pose the required threat of continuing criminal activity so as to constitute a pattern; and, (2) as to Mallon, the additional alleged predicates—involving isolated alleged acts spanning decades—are insufficiently "related" to each other so as to constitute a pattern (since they involve separate actors, separate events and separate victims). JTTF Mem. at 15-17. Rajaratnam's responses to these arguments are without merit.

*First,* Rajaratnam misstates Allison and Kanetkar's argument by claiming "the Former Agents try to argue that the predicates they committed amount to a 'single scheme', *i.e.*, the New Jersey Action, and thus fail to establish continuity." Opp. at 31. Rajaratnam truncates the

5

argument made by Allison and Kanetkar,[4] namely, that Rajaratnam cannot establish continuity because he has pleaded a single scheme against a single victim. By omitting the single victim aspect, Rajaratnam is then able to knock down his straw man argument by citing *H.J. Inc. v. Northwestern Bell Telephone Company,* 492 U.S. 229, 237 (1989), and arguing that "multiple predicates within a single scheme" might be sufficient to constitute a pattern, if there was a threat of continued criminal activity. The law is clear, however*,* that where the single scheme involves only a single victim (as alleged here), the requisite continuity cannot be found. *See Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) (collecting cases).[5]

The NJ Action allegations against Mallon suffer from the same "pattern" deficiencies as the allegations against Allison and Kanetkar. Rajaratnam, however, further adds outlandish and unrelated claims against Mallon that (1) he bribed a "federal official" in 2003-04, by offering him "free information" in exchange for other information that might help Motley Rice in its 9/11 litigation, Compl. ¶¶ 62-64; (2) he may have bribed another FBI analyst, by taking him on a "house hunting trip" in 2004, although Rajaratnam acknowledges that he currently lacks sufficient information to make that allegation, *id.*, ¶¶ 65-66; and (3) he defrauded an Afghan

---

[4] Importantly, RICO pattern allegations must be examined individually. Thus, the "decades-long" scheme alleged against Motley Rice that does not involve or even mention Allison or Kanetkar, cannot be attributed to them. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant."); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 318–19 (S.D.N.Y. 2009) ("Defendants also argue that [plaintiff] has failed to plead a closed-ended pattern of racketeering. To determine whether [plaintiff] has properly alleged continuity, the Court must 'evaluate the RICO allegations with respect to each defendant individually.'").

[5] Additionally, this alleged scheme *is* inherently terminable in that it has a natural ending point—the termination of the NJ Action. *Watral v. Silvernails Farm LLC.,* 51 F.App'x. 62, 66 (2d Cir. 2002); *see also Lefkowitz v. Bank of N.Y.,* No. 01 Civ. 6252(VM), 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003), *rev'd in part on other grounds,* 528 F.3d 102 (2d Cir. 2007) (finding no indication that defendants would continue their alleged scheme once the probate proceedings were completed, therefore no open-ended continuity); *Dempsey*, 132 F. Supp. 2d at 228 (no continuity where the alleged fraud "was designed to extract money from the plaintiff. Given this limited goal, the scheme was inherently terminable").

drug lord in 2005 by falsely inducing him to return to the United States. *Id*. ¶¶ 68-71. These far-flung allegations clearly do not properly plead valid predicate acts. Moreover, they are so isolated and distinct from the alleged scheme against Rajaratnam that they could not possibly form a valid RICO pattern, which requires that the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Bigsby v. Barclays Capital Real Estate, Inc*., 298 F. Supp. 3d 708, 717 (S.D.N.Y. 2018) (internal quotations and citations omitted). Moreover, Rajaratnam's conclusory statements such as "the Amended Complaint alleges repeated criminal conduct effectuated via a shared methodology of similar predicate acts," and the enterprise "has deployed this criminal methodology across several interrelated schemes targeting similar victims," Opp. at 33, are insufficient to establish the requisite relatedness so as to constitute a valid RICO "pattern."

### III. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THE JTTF DEFENDANTS DIRECTED THE ENTERPRISE'S AFFAIRS AND PARTICIPATED IN ITS OPERATION OR MANAGEMENT

The JTTF Defendants also moved to dismiss the Complaint because it fails to allege adequately that they played a sufficient role in directing the alleged enterprise's affairs and participating in its operation or management. JTTF Mem. at 17-19. In response, Rajaratnam argues: (1) that he is disadvantaged in responding by virtue of the defendants' concealment of their alleged involvement and is therefore entitled to discovery, not dismissal; (2) the Complaint alleges that the JTTF Defendants exercised broad discretion in carrying out the Motley Rice principals' instructions, which supposedly can satisfy the *Reves* requirement, and (3) that the question of "operation or management" is for the factfinder, and should not be determined on a motion to dismiss. Opp. at 33-36. These arguments are easily refuted.

7

*First*, having failed to pursue relief from the DCO when his counsel told the Court nearly a year ago that he would do so, and having already amended the Complaint once, Rajaratnam cannot continue to wield the DCO as an excuse for pleading inadequacies.

*Second*, Rajaratnam's arguments as to the level of the JTTF Defendants' managerial control over the Motley Rice enterprise's affairs are so improbable that they should be disregarded. Rajaratnam alleges the enterprise began in the 1970s – when the JTTF Defendants were not even FBI agents, much less former ones – and approximately 30 years *before* any JTTF Defendant is even mentioned in connection with Motley Rice. Compl. ¶¶ 30, 55-57. Indeed, Mallon is first named in 2003, in connection with any alleged predicate act. *Id.* ¶¶ 55-58. And, Allison and Kanetkar are not even named in connection with any alleged predicate act until the filing of the New Jersey action in 2009, approximately 40 years after the "enterprise" began using its purported scheme of using "criminal conduct" to extort massive settlement. *Id.* ¶ 30.

Moreover, the absurdity of Rajaratnam's claim is exposed by the list of acts he gives in an attempt to paint the JTTF Defendants as leaders with "broad" control and "discretion" over the enterprise. Opp. at 35. This list stretches the actual allegations in the Complaint beyond the breaking point. Indeed, when reading the actual allegations laid out in the Complaint, it becomes clear that the alleged enterprise was operated, designed and controlled *by Motley Rice and its lawyers, not by the JTTF Defendants*. And while it is true that, in certain instances, an enterprise may be "operated" by "lower-rung participants in the enterprise" along with upper management, *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993), the JTTF Defendants are not plausibly alleged to have played such a role.

In support of his argument, Rajaratnam places great reliance on a criminal case, *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995), but that case does nothing to alter this result.

8

There, the government provided "overwhelming evidence" that the investigators – who were found guilty at trial – knew of the broad fraudulent scheme, operated the scheme, and were "high up on the ladder of operation." Of course, this is not at all the case here.

*Third,* Rajaratnam's argument that the issue of management is for the trier of fact, and may not be resolved in the context of a motion to dismiss, is simply wrong. In support of that argument, Rajaratnam relies on *United States v. Allen,* 155 F.3d 35 (2d Cir. 1998), and claims that *Allen* is a case where the Second Circuit "affirm[ed] denial of summary judgment." Opp. at 34. *But that is not true.* In *Allen*, the Second Circuit *reversed* the grant of summary judgment *in favor* of the plaintiff (the United States) in a civil RICO case, finding that the district court had erred in concluding that there was sufficient evidence of management and control to enter summary judgment *in favor* of the plaintiff. 155 F.3d at 43. It was only in the context of reversing summary judgment that the Circuit referred to the issue as one for the "fact-finder." *Id.* Obviously, the *Allen* case says nothing about the measurement of a RICO complaint at the pleading stage, since it was not decided in the context of a motion to dismiss.

This result is fully supported by Judge Bianco's decision in *Flexborrow*, where the court dismissed a civil RICO claim at the pleading stage because (among other reasons) the complaint insufficiently alleged that the defendant participated in the enterprise's "operation or management." 255 F. Supp. 3d at 415-16. In so doing, the court marshaled numerous other cases where the issue of "operation" or "management" was resolved with dismissal in favor of the defendant at the pleading stage. *Id.* The holding in *Flexborrow* and the cases cited therein is fully applicable here.

IV. **RAJARATNAM'S RICO CLAIMS ARE TIME BARRED**

In their motion to dismiss, the JTTF Defendants relied on the Second Circuit's now familiar "storm warnings" analysis in the *Koch* case to argue that Rajaratnam's RICO claims

9

were time barred.  JTTF Mem. at 19-26.  In response, Rajaratnam argues that his Complaint alleges that he "spent the years after Motley Rice commenced the New Jersey Action investigating the source of Motley Rice's false claims . . ."  Opp. at 41.  And that if he failed to discover he was the victim of a RICO enterprise until 2016, it was not for lack of a diligent inquiry, but rather because the defendants engaged in a campaign of fraudulent concealment, giving rise to equitable tolling.  *Id.* at 41-43.

This argument, and his citation to paragraph 111 of the Complaint, actually *buttresses* the JTTF Defendants' statute of limitations defense.  Compl. ¶ 111.  ("For years after Motley Rice filed the New Jersey Litigation, Mr. Rajaratnam, through his counsel, repeatedly requested that Motley Rice provide information regarding the identities of any investigators it retained . . .").  Specifically, this response and Complaint paragraph 111 amount to an admission that Rajaratnam saw "storm warnings" at the time of the commencement of the NJ Action, and had actual or inquiry notice *then* (in 2009) of the probability he was the potential victim of a fraud.  Assuming for argument's sake that the investigation Rajaratnam undertook, as described above, was diligent, tolling the statute of limitations for some period of time, the RICO claims are still time barred.  This is because, as the JTTF Defendants argue in their motion to dismiss (JTTF Mem. at 23-25), under Rajaratnam's logic, there could be no mistaking the implications of the September 30, 2011 *Vanity Fair* article.  The similarities between the statements quoted in the article and the NJ Action complaint simply could not have been ignored – especially to someone such as Rajaratnam who effectively concedes he had already seen "storm warnings" – and so the four-year clock started running no later than the date of the article's publication, leaving his 2018 filed RICO complaint time barred by several years.[6]

---

[6] The defamation claim is time barred also.  For his response, Rajaratnam contends that although his Complaint alleges that, *inter alia*, Kanetkar, as a JTTF member, "transacted [his] affairs in the Eastern

10

**CONCLUSION**

For all the reasons stated above, in their moving papers and in the corresponding filings by the Motley Rice defendants, the JTTF Defendants respectfully request that the Court grant their motion and that the Complaint be dismissed with prejudice.

Dated: New York, New York
August 8, 2019

                                                    **KRANTZ & BERMAN LLP**

                                        By: _____
                                              Larry H. Krantz
                                              Lisa A. Cahill
                                              747 Third Avenue, 32nd Floor
                                              New York, New York 10017
                                              (212) 661-0009
                                              lkrantz@krantzberman.com
                                              lcahill@krantzberman.com

---

District of New York" (*see* Compl., ¶¶ 27, 80), the Complaint "does not allege that Kanetkar performed any of his investigation work in New York, or that he traveled to New York in connection with the prosecutions or for any other purpose." Opp. at 47. This response is utterly implausible and offers no reason for this Court to give life to a seldom used tolling provision.