UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

RAJ RAJARATNAM, an individual,               :

                   Plaintiff,               :

      - against -               :

MOTLEY RICE, LLC, a South Carolina limited   :
liability company, MICHAEL E. ELSNER, an     :
individual, JAYAT P. KANETKAR, aka JAY       :
KANETKAR, an individual, RUDRA, an           :
individual named pseudonymously, BRIAN       :
MALLON, an individual, and JOHN "HANK"       :
ALLISON, an individual,                      :

                 Defendants.               :

------------------------------------------------------- x

Case No.: 1:18-cv-03234-KAM-RML

ECF Case

**Oral Argument Requested**

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION
## BY DEFENDANTS MOTLEY RICE, LLC AND
## <u>MICHAEL E. ELSNER TO DISMISS AMENDED COMPLAINT</u>

Robert D. Balin
Sharon L. Schneier
Abigail B. Everdell
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: robbalin@dwt.com

*Attorneys for Defendants Motley Rice, LLC and
Michael E. Elsner*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    LITIGATION ACTIVITIES IN THE NEW JERSEY ACTION AND STATEMENTS IN THE *VANITY FAIR* ARTICLE ARE NOT COGNIZABLE RICO PREDICATE ACTS ................................................................................................................. 2

    II.   PLAINTIFF DOES NOT ALLEGE A RICO INJURY ................................. 7

    III.  PLAINTIFF DOES NOT ALLEGE A RICO "PATTERN" .......................... 9

CONCLUSION ....................................................................................................................... 10

4815-0186-3069v.10 0111362-000001

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bascuñán v. Elsaca*,
  874 F.3d 806 (2d Cir. 2017)................................................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)...........................................................................................................6

*Burrowes v. Combs*,
  312 F. Supp. 2d 449 (S.D.N.Y. 2004), *aff'd*, 124 F. App'x 70 (2d Cir. 2005)...........................7

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011)...................2, 3

*Dandong Old N.-E. Agriculture & Animal Husbandry Co. v. Hu*,
  No. 15 Civ. 10015 (KPF), 2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017) ................................7

*Doe v. Trump Corp.*,
  No. 18 Civ. 9936 (LGS), 2019 WL 3330918 (S.D.N.Y. July 24, 2019) ..............................7, 8

*E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015)................................3

*Feld Entm't Inc. v. American Society for the Prevention of Cruelty to Animals*,
  873 F. Supp. 2d 288 (D.D.C. 2012) ....................................................................................5

*Frydman v. Verschleiser*,
  172 F. Supp. 3d 653 (S.D.N.Y. 2016) ..................................................................................6

*G-I Holdings, Inc. v. Baron & Budd*,
  179 F. Supp. 2d 233 (S.D.N.Y. 2001) ..................................................................................5

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002) ..................................................................................5

*Geiss v. Weinstein Co. Holdings, LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)...................................................................................8

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
  67 F.3d 463 (2d Cir. 1995).................................................................................................10

*Guzman v. Hecht*,
  No. 18 Civ. 3947 (DLC), 2019 WL 1315888 (S.D.N.Y Mar. 22, 2019)...................................4

ii

*Hollander v. Flash Dancers Topless Club*,
   173 F. App'x 15 (2d Cir. 2006) ...........................................................................9

*I.S. Joseph Co. v. J. Lauritzen A/S*,
   751 F.2d 265 (8th Cir. 1984) ...............................................................................3

*Kimm v. Lee*,
   No. 04 Civ. 5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196
   F. App'x 14 (2d Cir. 2006) ...................................................................................6

*Menasco, Inc. v. Wasserman*,
   886 F.2d 681 (4th Cir. 1989) .............................................................................10

*Nakahara v. Bal*,
   No. 97 Civ. 2027 (DLC), 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ...................3

*Republic of Kazakhstan v. Stati*,
   380 F. Supp. 3d 55 (D.D.C. 2019) .......................................................................2

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016) .........................................................................................8

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) ................................................................................10

*Snyder v. U.S. Equities Corp.*,
   No. 12 Civ. 6092 CJS, 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014) ...................3

*Sykes v. Mel Harris and Associates, LLC*,
   757 F. Supp. 2d 413 (S.D.N.Y. 2010), *aff'd*, 780 F.3d 70 (2d Cir. 2015) ..............4

*Tsipouras v. W&M Props., Inc.*,
   9 F. Supp. 2d 365 (S.D.N.Y. 1998) ......................................................................7

*United States v. Eisen*,
   974 F.2d 246 (2d Cir. 1992)..................................................................................4

*United States v. Pendergraft*,
   297 F.3d 1198 (11th Cir. 2002) ...........................................................................2

**Federal Statutes**

18 U.S.C. §§ 1961–1968 ("RICO") ...................................................................... *passim*

**Other Authorities**

James Fontanella-Khan, *Sri Lanka claims Rajaratnam gave Tamil Tigers
   'millions,'* Financial Times (Oct. 18, 2009) ........................................................8

Defendants Motley Rice, LLC and Michael E. Elsner (collectively, "Motley Rice")

submit this reply memorandum in support of their motion to dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

Defendants' Motion to Dismiss ("MTD") identified numerous ways in which the

Amended Complaint fails to state a plausible claim for relief and asserts time-barred claims.  In

his Opposition ("Opp."), Plaintiff repeatedly asks to be excused from basic plausibility pleading

standards because "the terms of the DCO [the discovery confidentiality order in the New Jersey

Action] prevent [him] from making more specific allegations."  Opp. at 8.[2]  In reality, this Court

gave Plaintiff generous time to seek relief from the federal judge overseeing the New Jersey

Action (*see* Dkt. 37; Oct. 14, 2018 Order), but Plaintiff chose not to make an application to use

DCO material in this action.  *See generally* Balin Decl., Ex. B (D.N.J. Docket).

When examined in light of proper legal standards, Plaintiff's allegations, for all their

color, collapse into nothing.  **First**, governing precedent makes clear that Plaintiff cannot base a

RICO claim on alleged improper litigation activities in the still-pending New Jersey Action.

Particularly since Plaintiff's litigation-related grievances are being actively litigated in another

district court, there is every reason for this Court to forbear from wading into those issues.  *See*

*also* MTD at 12-13.  Similarly, defendants' comments in the *Vanity Fair* Article do not

constitute mail or wire fraud and thus does not constitute a predicate act under RICO, nor has

plaintiff plausibly pled the elements of the remaining underlying RICO predicate offenses.

**Second**, Plaintiff has not plausibly pled that he suffered injury to business or property as the

---

[1] Motley Rice also joins in the arguments and additional grounds for dismissal (insofar as applicable to Motley Rice) set forth in the motion to dismiss and reply brief filed by its co-defendants.  The abbreviations used in Motley Rice's moving brief are used herein.

[2] In his Opposition, Plaintiff invokes the New Jersey Action DCO as an excuse for his failure to meet basic pleading standards at least five separate times.  *See* Opp. at 7-8, 20, 21, 22, 34.

*proximate* result of the challenged acts in the New Jersey Action, as he must to premise a claim

on those acts.  And what then remains – the pre-2006 Acts relating to disparate litigations

stretching back decades – indisputably do not relate to Plaintiff and caused him no injury.

**Third**, Plaintiff cannot credibly claim that a "pattern" links the New Jersey Action acts and the

pre-2006 Acts, or even that the New Jersey Action acts taken alone satisfy the "pattern"

requirement.  For all these reasons, dismissal of the RICO claims is warranted.[3]

## ARGUMENT

### I.      LITIGATION ACTIVITIES IN THE NEW JERSEY ACTION AND STATEMENTS IN THE *VANITY FAIR* ARTICLE ARE NOT COGNIZABLE RICO PREDICATE ACTS

It is well-established that complaints about unlawful litigation conduct and false litigation

filings – which is what Plaintiff alleges here – cannot form the basis of a RICO claim.  *Curtis &*

*Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 172, 173-75

(E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011) (citing cases); *Republic of*

*Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61 (D.D.C. 2019) ("At bottom, the RICO claims are

entirely predicated on defendants' initiation and prosecution of non-frivolous litigation, and

plaintiff's alleged domestic injuries consist of the legal costs it incurred . . . .  This far-fetched

theory of RICO liability lacks legal support.").[4]

---

[3] Plaintiff has also not refuted Motley Rice's arguments that his RICO and defamation claims are time barred.  Plaintiff was well aware of his alleged *injury* – which is what triggers the running of the four year limitations period in a RICO action – prior to expiration of the limitations period.  *See* MTD at 24-26.  In his Opposition, Plaintiff does not dispute that he was aware of his alleged injury prior to the expiration of the limitations period.  Rather, he claims that he was aware of the "storm warnings" but his "diligent investigation" was "thwarted" by defendants "fraudulent concealment" of their conduct.  Opp. at 41, 43.  These arguments do not change that Plaintiff was clearly aware that – as he contends – the New Jersey Action had been improperly initiated in 2009, eight years before he filed this action.  *See* MTD at 25.  Similarly, Plaintiff was well aware of his alleged injury from the *Vanity Fair* Article when it was published in 2011, and he has not pled any basis that would entitle him to relief from the strict one-year statute of limitations for his defamation claims.  *See id*. at 27-30.

[4] *See also United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("prosecuting litigation activities as federal crimes [under RICO] would undermine the policies of access and finality that animate our legal system");

Plaintiff attempts to sidestep this clear caselaw by denying that there is any "unqualified 'safe harbor'" for litigation activities under RICO. Opp. at 10. But, Defendants never asserted an "unqualified 'safe harbor.'" Rather, the New Jersey Action-related activities that form the backbone of Plaintiff's RICO claims are the very sort of litigation activities that courts consistently hold are not cognizable under RICO. *See* MTD at 10-14. Where, as here, a plaintiff essentially complains about malicious prosecution – even if the acts are framed as wire fraud, suborned perjury, and misuse of litigation materials in an ongoing litigation – courts have consistently rejected efforts to transform challenged litigation conduct into RICO predicate acts. *See* MTD at 10-12; *Snyder v. U.S. Equities Corp.*, No. 12-CV-6092 CJS, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014) (dismissing RICO claims where the "gravamen of the allegations" was that "defendants pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt to obtain money or property to which they were not entitled"); *Curtis*, 758 F. Supp. 2d at 173 (contention that defendant attorneys "suborned perjury" and made false filings in ongoing litigation constituted litigation activities not cognizable under RICO). *See also E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) ("[a]busive or sham litigation does not constitute a RICO predicate act") (collecting cases), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015). And underscoring that Plaintiff is attempting to raise a RICO claim from mere litigation activities, he is currently actively litigating the *very* activities he complains of here – of improper receipt of government information, withholding information in discovery, witness interference, and making false court filings – in the New Jersey Action. *See* MTD at 12-13; *Nakahara v. Bal*, No. 97-cv-2027 (DLC), 1998 WL 35123, at *9 (S.D.N.Y. Jan. 30, 1998) (rejecting RICO claim that "seeks

_____

*I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute [RICO] is unnecessary.").

to have this Court in effect decide the merits of lawsuits or proceedings that are already pending between these same parties in [an]other jurisdiction[].").

Indeed, the very cases cited by Plaintiff serve to emphasize the line between disguised malicious prosecution claims not cognizable under RICO – like Plaintiff's claims – and racketeering schemes that use unlawful litigation activities to effectuate a broader fraudulent purpose.  For example, in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), a criminal RICO action, members of a law firm were prosecuted based on their pursuit of over a dozen counterfeit personal injury claims, using intentionally falsified evidence and testimony, which earned the firm millions of dollars.  *Id*. at 251.  Similarly, *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), *aff'd*, 780 F.3d 70 (2d Cir. 2015), involved an alleged scheme to buy "portfolios" of defaulted debts and obtain default judgments against the debtor plaintiffs (a class of *thousands*) by filing fraudulent proofs of service and factual affidavits executed at a volume of tens of thousands per year.  *Id*. at 419-20.  As a consequence, the plaintiffs had their bank accounts restrained, their wages garnished, and/or their property seized, without any notice. *Guzman v. Hecht*, No. 18-cv-3947 (DLC), 2019 WL 1315888 (S.D.N.Y Mar. 22, 2019), is even less availing, as it was premised on the fraud in the provision of legal services, not on the subsequent litigations themselves.  *See id*. at *6-8 (RICO claims could proceed based on firm misrepresenting their services and collecting fees while engaging in detrimental strategies without clients' knowledge).  In these cases, the RICO claim was based on a pattern of systematic fraudulent and unlawful financial activity broader than, and independent of, any one lawsuit.  Here, in stark contrast, Plaintiff's Amended Complaint identifies <u>no</u> activities that financially benefitted Motley Rice in the New Jersey Action, but only aggressive litigation tactics in a hard fought case.  The only profitable litigations alleged – involving asbestos and

4

tobacco[5] – were brought decades ago by the firm Ness Motley, and the only two RICO predicate acts alleged in that context related to asbestos litigations dating back to the 1970s.[6] *See* Am. Compl. ¶¶ 30-34.

Nor does Plaintiff find support in the non-controlling decision of *Feld Entm't Inc. v. American Society for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 312 (D.D.C. 2012). In *Feld*, the Court allowed a RICO case to proceed where plaintiffs did not merely "claim[] that defendants filed false documents with the Court or otherwise engaged in frivolous and harassing litigation; they claim the entire lawsuit was based on bribery of the lead plaintiff and witness." *Id.* at 318-19. Plaintiff does not allege that the *entire* New Jersey Action was based on false documentary evidence or bribery. Indeed, Plaintiff does not challenge the authenticity of the vast majority of the evidence underlying the New Jersey Action, but only alleges that some of it was obtained through improper means, and that Motley Rice concealed the sources of this information. Am. Compl. ¶¶ 72-78, 110. Plaintiff also acknowledges that the one set of factual allegations he claims were false were subsequently dropped from the complaint in the New Jersey Action, and the case proceeds notwithstanding. *Id.* ¶¶ 148-50.

For all its conspiratorial tones, the picture Plaintiff paints is of a single allegedly "frivolous and harassing" litigation against him, coupled with a grab bag of utterly unrelated acts, many from decades ago, which bear no relationship to Plaintiff or the acts he claims harmed

---

[5] Far from alleging Motley Rice derived any money from the 9/11 litigations through which the vast majority of the supposed predicate acts occurred, Plaintiff alleges these litigations went "stagnant," and ultimately cost Motley Rice "millions" of dollars, while the "government contracts" Rosetta allegedly hoped to secure "never materialized." *See* Dkt. 1 (original Complaint) ¶¶ 116, 131-32. *See also* Am. Compl. ¶ 56.

[6] These claims are drawn from allegations in a lawsuit against the firm Ness Motley and other class action firms, but Plaintiff neglects to mention that the RICO claims originally brought arising from these alleged activities were dismissed on a 12(b)(6) motion, and never re-pled against Ness Motley. *See G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 255 (S.D.N.Y. 2001); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 537 & n.6 (S.D.N.Y. 2002). *See also* MTD at 6 n.6.

him.  *See* Section III, *infra*.  And though Plaintiff claims there is "something more" to his RICO

claims than litigation activity, the core of his allegations, including his claims of "pattern" and

injury, are all focused squarely on the New Jersey Action.  Even to the extent Plaintiff alleges

acts relating to him which do *not* involve paradigmatic litigation activities such as court filings,

discovery conduct, and witness testimony (and Defendants dispute whether *any* of the alleged

activities fall outside these categories), the acts are not even plausibly alleged as criminal

offenses.  *See* MTD at 17-22.  The alleged activities in the ongoing New Jersey Action are

precisely the sort that courts in this jurisdiction will not recognize as sufficient to state a RICO

predicate act.  *See* MTD at 10-11.

       Plaintiff also challenges the settled law of this jurisdiction that "thinly clothed"

defamation claims are not sufficient to state a RICO predicate act.  *Kimm v. Lee*, No. 04-cv-5724

(HB), 2005 WL 89386, at *4-5 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006).

But typical defamation-type claims – like Plaintiff's – do not satisfy the elements of mail or wire

fraud because these criminal offenses require both that the underlying statement operate by

"inducing another in reliance upon it," and result in harm to "property."  *Id.*[7]  Here, Plaintiff has

pled neither inducement, reliance, nor harm to property.  Instead, he pleads only that the Motley

Rice Defendants "coordinated" the *Vanity Fair* Article to somehow exert pressure *on Plaintiff* to

enter into a monetary settlement – which Plaintiff did not do.  Am. Compl. ¶ 106.  *Cf. Frydman

v. Verschleiser*, 172 F. Supp. 3d 653, 669 (S.D.N.Y. 2016) (distinguishing *Kimm* because "there

was no allegation of reliance, whereas, in this case, the plaintiffs allege that Frydman's business

associates did rely on the allegedly false representations and that, as a result, Frydman was

---

[7] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), cited by Plaintiff, holds that a *plaintiff* need not have relied on the alleged fraudulent statement to state a claim for mail or wire fraud (a.k.a. "first-party reliance").  *Id.* at 641.  Here, Plaintiff has not pled that *anyone* relied on the alleged defamatory statements by Rudra and Kanetkar to *Vanity Fair*, or that any property injury resulted from those statements.

deprived of money and property.").  The only injury alleged to have actually resulted from the Article was to Plaintiff's reputation (Am. Compl. ¶¶ 190-92), which is not a cognizable "property" injury under the mail and wire fraud statutes.[8]  *See* MTD at 15.  In sum, the Amended Complaint does not allege a RICO predicate act relating to the *Vanity Fair* Article.

## II.     PLAINTIFF DOES NOT ALLEGE A RICO INJURY

Plaintiff argues that he lost money, reputational standing, and business opportunities, and has spent litigation fees, as a result of Defendants' conduct.  Opp. at 37-40.  Reputational injury is not harm to business or property under RICO.  *Burrowes v. Combs*, 312 F. Supp. 2d 449, 452 (S.D.N.Y. 2004), *aff'd*, 124 F. App'x 70 (2d Cir. 2005) ("damage to . . . professional reputation" is not "an injury cognizable under RICO"); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) ("mere injury to character [and/or] business reputation . . . are not actionable under civil RICO").  So, too, RICO requires not only that Plaintiff allege injury to property, but also that the injury was proximately caused by the alleged RICO activities.  As Judge Schofield recently noted, "even at the pleading stage, civil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury," and "a court should rarely 'go beyond the first step' in assessing causation."  *Doe v. Trump Corp.*, No. 18-cv-9936 (LGS), 2019 WL 3330918, at *6, *8 (S.D.N.Y. July 24, 2019).  It is not enough under RICO to claim that Defendants' acts were the "but for" cause of plaintiff's injury.  "Rather, a complaint must allege a causal connection between the substantive RICO violation and the

---

[8] The only other case cited by Plaintiff, *Dandong Old N.-E. Agriculture & Animal Husbandry Co. v. Hu*, No. 15-cv-10015 (KPF), 2017 WL 3328239 at *11 n.6 (S.D.N.Y. Aug. 3, 2017), does not help him either. That case *dismissed* RICO claims, and the portion Plaintiff relies on is a footnote of dicta in which the court questioned whether reputation could *ever* be "cognizable under RICO," and only "assume[d]," "for purposes of this Opinion," that it could.

plaintiff's injury that is not 'too remote, purely contingent, or indirect.'" *Doe*, 2019 WL 3330918, at *5 (citations omitted); *see also Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (a plaintiff "does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts").

Here, Plaintiff fails utterly to meet the proximate cause requirement.  His bald assertions that Defendants' activities in allegedly procuring government information outside the *Touhy* process lost him "numerous investment opportunities in Sri Lanka" and caused Sri Lankan officials to "block[] the return and repatriation" of $3 million are, at best, too remote.  Opp. at 37-38.[9]  To satisfy proximate cause, "'the conduct giving rise to the fraud' must be 'the conduct directly causing the harm,' unattenuated by substantial intervening factors or third parties." *Doe*, 2019 WL 3330918, at *8 (citations omitted).  Here, Plaintiff's theory involves numerous intervening factors, including individual third-party business decisions, the assumption that "investment opportunities" would have led to returns, and Plaintiff's own criminal indictment for a massive financial fraud before the New Jersey Action was filed. *See* MTD at 4.[10]  Indeed, given Plaintiff's high-profile conviction and ongoing incarceration for criminal securities fraud, he does not even plausibly allege the New Jersey Action-related acts were a *but-for* cause of his financial woes, much less the direct and proximate cause. *See* MTD at 3.  Nor do Plaintiff's claimed litigation expenses – which allegedly arose from his efforts to "uncover" the alleged

---

[9] Plaintiff's RICO claim fails for the further reason that these are not domestic injuries.  Rather, Plaintiff complains about injury to property or financial interests in Sri Lanka.  Am. Compl. ¶¶ 14; *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016); *Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017).

[10] It was also reported before the New Jersey Action was filed that the Sri Lankan government itself accused Plaintiff of funding the LTTE. *See* James Fontanella-Khan, *Sri Lanka claims Rajaratnam gave Tamil Tigers 'millions,'* FINANCIAL TIMES (Oct. 18, 2009), *available at* https://www.ft.com/content/9629749a-bc17-11de-9426-00144feab49a.

RICO violations – satisfy the proximate cause requirement.  "[I]njuries caused not by the alleged racketeering violations, but by the discovery of those actions and the consequences of that discovery, are not cognizable damages under RICO."  *Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 18 (2d Cir. 2006).  Because Plaintiff fails to allege an injury cognizable under RICO, his claims must be dismissed.

## III.   PLAINTIFF DOES NOT ALLEGE A RICO "PATTERN"

Plaintiff does not allege a "pattern," but merely a series of disparate, unrelated acts that span decades and have no discernable relationship.  In his Opposition, Plaintiff struggles mightily to articulate some connecting tissue between the acts alleged – which range from interfering with legislative reform of asbestos litigation decades ago, to house-hunting with an FBI official, to "coercing" an Afghan drug lord to come to the United States at the behest of the DEA, *see* Am Compl. ¶¶ 33, 66, 70-71 – even attempting to define the "pattern" as "routine[] interfere[nce] with and/or co-opt[ing] the legislative, executive, and judicial branches of the federal government in order to identify deep-pocket targets and use secret and illicit sources of 'evidence' to coerce sizeable monetary settlements through high-profile litigation and public shaming."  Opp. at 9.  But this claim that the alleged acts are related by virtue of involving interference with *any and every branch of government* is so general as to be utterly meaningless, laying bare Plaintiff's inability to plausibly allege any real connection between the isolated and dissimilar alleged "schemes."  Second, Plaintiff's articulation of Defendants' alleged *modus operandi*, with its focus on "sizeable monetary settlements" and "public shaming," does not even accurately describe the "schemes" alleged:  Only Plaintiff is alleged to have been subject to any improper "public shaming," and he does not allege he paid any monetary settlement, nor does he even allege that Motley Rice made a settlement *demand* linked to the New Jersey Action-related acts or the *Vanity Fair* Article.  Indeed, in the decades' worth of acts alleged, only one "scheme"

9

is alleged to have resulted in any "monetary settlement" at all – namely, the Ness Motley asbestos litigations dating as far back as the 1970s, which did not involve *any* of the defendants, or any alleged access to or co-opting of government secrets.  *See supra* at 5.

In sum, Plaintiff has not articulated any plausible "pattern" connecting the New Jersey Action activities and the pre-2006 Acts.  Accordingly, the Court has no basis to consider the pre-2006 Acts as part of Plaintiff's RICO claims.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (declining to consider alleged schemes that were not "sufficiently related to the enterprise [alleged]").  Nor do the New Jersey Action acts standing alone satisfy the "continuity" prong of the pattern requirement, as they indicate no "threat of future criminal activity."  *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 469 (2d Cir. 1995). *See also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (where "Defendants' actions were narrowly directed towards a single fraudulent goal" and had a "limited purpose" and "one set of victims," they did not satisfy the continuity requirement for a RICO pattern).

## CONCLUSION

For all the reasons set forth herein, Defendants respectfully request that the Amended Complaint be dismissed in its entirety with prejudice.

4815-0186-3069v.10 0111362-000001

Dated:  New York, New York

August 8, 2019

                                      Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP

                                        By:  */s/ Robert D. Balin*
                                                Robert D. Balin
                                              Sharon L. Schneier
                                                Abigail B. Everdell

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY  10020-1104
                                        (212) 489-8230 Phone
                                        (212) 489-8340 Fax
                                        E-mail: robbalin@dwt.com

                                        *Attorneys for Defendants Motley Rice, LLC and*
                                        *Michael E. Elsner*